M.M.H., Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 91–3130.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided June 30, 1992.

As Amended July 7, 1992.

**286**

D.J. Weis (argued), Johnson, Weis, Paulson & Priebe, Rhinelander, Wis., for plaintiff-appellant.

Mel S. Johnson, Asst. U.S. Atty. (argued), John E. Fryatt, U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The plaintiff, abbreviated in the papers as M.M.H., was formerly an active member of the United States Army. The United States may have committed at least two torts against her. First, the army mistakenly determined that she was infected with the HIV–III virus which causes AIDS. Then, after a second blood test indicated that the plaintiff was not infected, the army failed to inform her of this fact. The initial misdiagnosis occurred while the plaintiff was on active duty, so the *Feres*[1] doctrine precludes the plaintiff from recovering for that tort. The question on appeal is whether the plaintiff may go to trial on the second tort, the failure to notify the plaintiff that she was not infected. The plaintiff claims that the army negligently inflicted emotional distress by failing to rectify its prior mistake, and that this failure prolonged and/or aggravated her emotional distress over her fate. The district court relied on both the *Feres* doctrine and Wisconsin tort law in granting summary judgment for the United States. We reverse.

*Facts*

The sequence of events in this case is essential. On November 15, 1985, an army doctor determined that the plaintiff was infected with the HIV–III virus which causes AIDS. R. 1, Exh. B., p. 2. After being told this tragic news, the plaintiff began to suffer from depression and concomitant ailments, such as fatigue, insomnia, a rash, and depressed cellular immunity. She was honorably discharged on November 27, 1985. After returning home, she remained depressed and continued to suffer some of these ailments. At one point, she even attempted to commit suicide, first by drinking an excessive amount

---

**1.** *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

of alcohol and then by cutting her wrists and arm with a ripped aluminum can. Fortunately, these attempts were unsuccessful, for on December 6, 1985, her personal physician discovered in an independent blood test that the plaintiff did not have the HIV–III virus. R. 1, Exh. B., p. 2. Sometime in December 1985 or in January 1986, the doctor also discovered that the army was independently aware that the plaintiff was not infected with the virus. On December 3, 1985, *after* the plaintiff's discharge, the army had learned that the initial blood test had been incorrect. R. 2, Exh. A, p. 2. Yet the army had never notified the plaintiff. Because the army did not notify her promptly of its error, she claims that she remained depressed longer than if she had discovered the mistake immediately.

Based on these events, the plaintiff sued numerous parties on various theories. Only the second tort allegedly committed by the United States is at issue here. The plaintiff argues that the United States negligently inflicted emotional distress when the army failed to notify her promptly that a second blood test had indicated that she was not infected. The district court heard the case pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* On the United States' motion for summary judgment, the district court held that the plaintiff's suit was barred by the *Feres* doctrine because she failed to offer any evidence that she suffered new physical manifestations of emotional distress after her discharge from the army. In so holding, we believe that the district court misapplied *Feres.* The questions under *Feres* are whether the plaintiff presented evidence that she suffered a new and independent tort after discharge, and whether this tort prolonged or aggravated her injuries. The district court also held that the plaintiff did not allege sufficient physical injuries to satisfy the Wisconsin requirement in negligent infliction of emotional distress cases. On this prong, we believe that the district court wrongly ignored some of the plaintiff's physical injuries which began before her discharge from the army; as long as the second tort prolonged or aggravated

those physical injuries, they are relevant to the physical injury requirement. The district court further erred by ignoring her attempted suicide. Accordingly, we reverse and remand for further proceedings.

### Analysis

■ Two doctrines are relevant to this case. The first is the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). *Feres* constitutes an exception to the federal waiver of sovereign immunity embodied in the FTCA. Although the FTCA renders the United States liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, *Feres* restores immunity "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. As the district court recognized, under *Feres* the plaintiff's action "can only be predicated upon negligence which occurred following her discharge." Tr. p. 26. *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) (permitting action when the injury occurred after discharge). *Feres* thus promotes at least three policies, which we explained in depth in *Rogers v. United States,* 902 F.2d 1268, 1270–72 (7th Cir.1990): 1) the doctrine promotes military discipline and effectiveness; 2) the doctrine also protects the distinctively federal nature of the relationship between the government and the armed forces, which would be contradicted by the peculiarities of state tort law; and 3) it allows plaintiffs to avail themselves of statutory systems of compensation for such injuries.

■ The district court also granted summary judgment on the basis of Wisconsin tort law. In Wisconsin, a plaintiff who has alleged a negligent infliction of emotional distress must support her claim with evidence that her distress has manifested itself by physical injury. *Meracle v. Children's Service Society of Wisconsin,* 149 Wis.2d 19, 437 N.W.2d 532, 535 (1989). The purpose of the rule is to insure that claims of emotional distress are not fraudu-

lent. *Id.* Courts must therefore apply the "physical injury requirement" with a view to insuring that the plaintiff has incurred genuine emotional damage.

In ruling on the United States' motion for summary judgment, the district court held that "in order that plaintiff recover for negligent infliction of emotional distress [sic], there must be some physical injury manifesting the emotional distress which plaintiff suffered following her discharge from the Army." Tr. p. 26. The court then ruled that because "[n]one of her injuries can be reasonably said to have manifested themselves following her discharge, ... plaintiff is barred by the *Feres* doctrine from recovering damages against the government for injuries arising out of or in the course of activity incident to her service." *Id.*

The district court erred by requiring the plaintiff to provide evidence that the physical injuries first appeared after discharge. The question under the *Feres* doctrine is not whether the injury began before or after discharge. Rather, the questions are whether the government committed an independent tort after discharge, and whether this tort caused any damages. A tortfeasor may commit two separate torts, with one causing an injury and another aggravating or prolonging it. In such a case, even if the tortfeasor is not liable for the first tort, he or she may be liable for those damages which were caused by the second one. *See generally Prosser and Keeton on The Law of Torts*, § 52 (5th ed. 1984) (damages for separate torts should be apportioned if injuries are reasonably capable of being separated). The plaintiff in the present case is attempting to avail herself of this rule; her suit is not based on the army's initial misdiagnosis of her condition, which caused her emotional distress in

the first instance, but on the army's failure to correct that misdiagnosis promptly, which may have aggravated her emotional distress or allowed it to continue longer than it would have otherwise.

■ The United States argues that the army's failure to correct the misdiagnosis constitutes a continuation of the original pre-discharge tort, so that *Feres* should shield that tort as well. Although this is a question of first impression in our circuit, many other courts have been faced with "torts which commence while the plaintiff is on active duty and then continue, unabated, until well after discharge." *Thornwell v. United States*, 471 F.Supp. 344 (D.D.C. 1979). These courts have distinguished between, on one hand, "a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge," and, on the other, an "entirely different" tort committed after the plaintiff has been discharged. *Id.* at 351. *Feres* bars suit when the government's failure to warn or treat the plaintiff constitutes a continuation of the earlier, noncompensable tort. *See, e.g., Laswell v. Brown*, 524 F.Supp. 847 (W.D.Mo.1981), *aff'd*, 683 F.2d 261 (8th Cir. 1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Sweet v. United States*, 528 F.Supp. 1068, 1073–75 (D.S.D.1981), *aff'd*, 687 F.2d 246 (8th Cir. 1982). But it does not bar suit based on "a new and independent tort after discharge." *Prosser and Keeton on Torts*, § 131 at 1036 n. 44. "If the plaintiff is a civilian when the negligence occurs, immunity serves no valid purpose." *Thornwell*, 471 F.Supp. at 350.

We join the courts that have relied on this distinction.[2] *See, e.g. Thornwell*, 471 F.Supp. at 352 (when army allegedly experimented with LSD on prisoner, *Feres* would

---

**2.** At least one commentator has speculated that recent Supreme Court decisions have undercut this rule. *See Prosser and Keeton on The Law of Torts*, § 131 at 147 (1988 Pocket Part) (interpreting *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); and *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)). Although these cases evince a general expansion of the *Feres* doctrine, none of them specifically requires us to repudiate what has by this time become hornbook law. As a result, we join the circuits which have held that under *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the plaintiff can maintain an action based on the army's post-discharge failure to warn or treat the injured serviceperson if the negligent act constituted a new and independent tort.

not bar suit for government's failure to exercise its post-discharge duty of care unless post-discharge negligence was continuation of earlier tort); *Broudy v. United States*, 661 F.2d 125, 128 (9th Cir.1981) (in suit for negligent failure to warn, monitor, and treat serviceman exposed to radiation, *Feres* would not bar claim of post-discharge negligence if government learned of danger after discharge); *Cole v. United States*, 755 F.2d 873, 876–77 (11th Cir.1985) (same); *Everett v. United States*, 492 F.Supp. 318, 325–26 (S.D.Ohio 1980) (same); *see also Schwartz v. United States*, 230 F.Supp. 536, 540 (E.D.Pa.1964) (when naval doctor injected carcinogenic drug into plaintiff's sinus while plaintiff was in service, government liable for post-discharge failure to warn).[3] Under this theory, of course, "[t]he plaintiff's injuries must be apportioned and he may recover only to the extent that defendants' post-discharge negligence aggravated or prolonged his condition." *Thornwell*, 471 F.Supp. at 352–53.

These cases make the district court's error clear: the question is not whether the plaintiff suffered physical injuries which appeared for the first time after discharge, as the district court held. Rather, the questions under *Feres* are: Did the government commit an independent negligent act after discharge? And did this act prolong or aggravate a pre-existing injury so as to cause independent damages? Moreover, the question under Wisconsin law is: Did the plaintiff suffer sufficient physical injuries, as a result of the post-discharge tort and as manifestations of her emotional distress, to insure that her claim is not fraudulent? For the purposes of the government's motion for summary judgment, we believe that the answer to these questions is, "Yes."

### 1. The *Feres* Doctrine

■ Did the government commit an independent negligent act after the plaintiff's discharge from the service? As we have already explained, the plaintiff's claim is based on the army's post-discharge failure to notify the plaintiff that its prior diagnosis was wrong. If the government simply failed to rectify a prior mistake, this failure might be one continuous tort. *Wisniewski v. United States*, 416 F.Supp. 599 (E.D.Wis.1976) (dismissing claim when army negligently failed to inform plaintiff of results of blood test; this negligent nondisclosure continued after discharge, but was not a new and independent tort). In the present case, however, the plaintiff presented evidence that the government learned of its mistake *after* the plaintiff's discharge. R. 43, Exh. C, pp. 29–30. As a result, the government's duty to warn may have arisen after discharge, so that the government's failure to notify was a separate and independent post-discharge negligent act, distinct from its faulty diagnosis.

■ And did this second negligent act cause the plaintiff additional damage by aggravating or prolonging her emotional distress? The plaintiff presented evidence that she became even more distressed about her plight after discharge, because she feared facing her friends and family and having to explain how she contracted what was in 1985 (and perhaps remains) a mysterious and stigmatizing disease. R. 43, Exh. A, pp. 15–16; Exh. B., p. 15. The plaintiff also testified that she continued to suffer some of her physical ailments after discharge; these could additionally support her claim of continued emotional distress if the plaintiff establishes that the ailments would have ceased if not for the second tort. Finally, the plaintiff testified in her deposition that she attempted to commit suicide after her discharge. This evidence may indicate aggravation or prolongation as well.

---

**3.** The present case is different from some of these precedents in at least one respect: the original tort committed by the army in this case was negligent, not intentional. We perceive no reason why this distinction should make a difference, however. The critical question in applying the *Feres* doctrine is whether the action would inhibit military discipline or effectiveness. *See Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983). Actions based on post-discharge negligence have equally little effect on military discipline or effectiveness whether the original tort was intentional or negligent. *But see Sweet*, 528 F.Supp. at 1074 (refusing to allow post-discharge action on this, as well as other, grounds).

■ Here we note a complexity indicated by the sequence of events in this case, but not raised by the parties or the district court. As we have indicated above, the government can only be liable for damages caused by the second tort, i.e., emotional distress incurred by the plaintiff after the government failed to inform her that she was not infected. In order to recover, therefore, the plaintiff must provide evidence that her emotional distress continued not only after discharge, but also after December 3, the date the government incurred its duty to inform.

### 2. The Physical Injury Requirement

Did the plaintiff suffer sufficient physical injuries, as a result of the second negligent act and as manifestations of her emotional distress, to insure that her claim is not fraudulent? The plaintiff argues that her insomnia, rash, depressed cellular immunity, diarrhea, and finally her suicide attempts amply document her emotional distress. The district court believed that these injuries, save the suicide attempts, began before the plaintiff's discharge and were therefore insufficient. In addition, the court simply ignored the suicide attempts. Perhaps the court believed that self-inflicted injuries cannot satisfy the physical injury requirement as a matter of law; the government so argues on appeal.

■ We believe that the district court erred. It does not matter for purposes of Wisconsin's physical injury requirement when the plaintiff's physical injuries *began.* The question is whether the second tort prolonged or aggravated the physical injuries. As long as the plaintiff manifested physical injuries that are sufficient to support a finding that the second tort caused her genuine emotional damage, it does not matter under Wisconsin law whether those physical injuries began before or after discharge.

We also believe that the evidence regarding the plaintiff's suicide attempts is relevant to the physical injury requirement. In her deposition, the plaintiff testified that she tried to commit suicide by drinking excessive alcohol and by cutting her wrists and arm with a ripped aluminum can. R. 43, Exh. B., p. 16. The government argues that these self-inflicted injuries should not satisfy the physical injury requirement because a plaintiff may fraudulently fake self-inflicted injuries for the purposes of litigation. This argument has some merit, and we can certainly imagine circumstances under which a court would decide that a suicide attempt might have been spurious and should not satisfy the requirement. But there is no reason for us to ignore the suicide attempts in this case, because the government has never questioned the authenticity of the plaintiff's suicide attempts.[4] Nor is there any evidence in the record that gives us pause. To the contrary, the plaintiff's uncontradicted evidence indicates that the plaintiff attempted to commit suicide *before* she discovered that the army had misdiagnosed her condition. At that time, she could not have contemplated litigation, and thus had no reason to fake a suicide attempt. At the summary judgment stage of this case, we must assume that the suicide attempt was genuine.[5]

4. Even if the authenticity of the plaintiff's suicide attempt were contested, we question whether Wisconsin would preclude contested suicide attempts from being relevant to the physical injury requirement as a matter of law. Wisconsin courts have consistently allowed self-described quasi-physical injuries to satisfy the physical injury requirement, such as panic attacks, *Olson v. Connerly,* 151 Wis.2d 663, 445 N.W.2d 706, 712 (App.1989) ("victim's own description of physical manifestations a sufficient evidentiary basis to deny summary judgment") and hysteria, *Garrett by Kravit v. City of New Berlin,* 122 Wis.2d 223, 362 N.W.2d 137, 144–45 (1985) (victim's testimony supported reversal of summary judgment for defendant). Certainly,

the risk of a plaintiff fabricating his or her description of panic attacks or hysteria is equal to or greater than the risk of a plaintiff faking a suicide attempt. We conclude, therefore, that Wisconsin would probably not exclude evidence of a suicide attempt on summary judgment, but would allow the fact-finder to determine its ultimate authenticity.

5. We note another complexity indicated by the sequence of events in this case. If the suicide attempt occurred before the army's duty to inform arose (though after discharge), then it would not be relevant to whether the second tort caused the plaintiff genuine emotional dis-

Having decided that the plaintiff's pre-discharge injuries and suicide attempts are relevant, we now consider the injuries together, rather than one by one. *See Garrett by Kravit v. City of New Berlin,* 122 Wis.2d 223, 362 N.W.2d 137, 143–45 (1985) (when girl saw her brother run over by police, insomnia and hysteria together satisfied physical injury requirement); *Hawes v. Germantown Mutual Insurance Company,* 103 Wis.2d 524, 309 N.W.2d 356, 359–60 (App.1981) (when plaintiff's basement wall fell, plaintiff's heel abrasion, combined with the loss of weight (11 lbs) and appetite, "provide a sufficient basis for the trial court to determine that this was not a fraudulent claim"). Based on the plaintiff's depressed cellular immunity, insomnia, and suicide attempts, we conclude that the plaintiff has satisfied the physical injury requirement for the purposes of summary judgment. The plaintiff was falsely diagnosed with a fatal disease. And, as we have noted above, that disease is shrouded in mystery and stigma. We have little doubt that she suffered real emotional distress.

Finally, the plaintiff argues that mistakenly failing to inform someone that they do not have the AIDS virus is sufficiently likely to cause emotional distress that the physical injury requirement should not apply. Wisconsin has cut a hole in the physical injury requirement under this rationale in the past. *See LaFleur by Blackey v. Mosher,* 109 Wis.2d 112, 325 N.W.2d 314 (1982) (negligent confinement). Other states have also made exceptions to the requirement, when, for example, the defendant misinformed the plaintiff that a relative had died. *Id.* at 317 n. 2; *see also Prosser and Keeton on The Law of Torts,*

§ 54 at 362–63 (5th ed. 1984). The plaintiff cleverly argues that if informing someone that a loved one has died forms an exception to the requirement, then informing someone that they themselves are going to die should also. This argument has force. Whether Wisconsin law would recognize such an exception remains an open question, however, and we have recently declined to speculate whether Wisconsin would expand *LaFleur. Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1561 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991). In any case, we do not need to reach this issue because of our holding that the plaintiff has satisfied the physical injury requirement.[6]

### Conclusion

For these reasons, we REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion. On remand, the plaintiff may be entitled to damages if she can prove that the army's failure to notify her that she did not have the virus allowed her emotional distress to continue longer than it would have otherwise. She would also be entitled to damages if the second tort aggravated her distress. The damages would be calculated from the time the army committed the tort, i.e., from the time the army discovered after discharge that it had misdiagnosed her illness but failed to take appropriate action.

tress. The record on appeal does not indicate whether the suicide attempt occurred before or after December 3, so we cannot decide this question here. Even if the district court decides that the suicide attempt did occur before December 3, it is possible that the plaintiff's other post-December 3 ailments may satisfy the physical injury requirement.

**6.** The plaintiff also moved for a certification of these physical injury questions to the Wisconsin Supreme Court pursuant to Circuit Rule 52 and Wis.Rev.Stat. § 821.01 (West's 1990). We have

already held that Wisconsin law gives us sufficient guidance to hold that a suicide attempt whose authenticity is unchallenged, combined with other ailments, satisfies the physical injury requirement. Thus, we need not certify this question to the Wisconsin Supreme Court. *Misany v. United States,* 873 F.2d 160, 164 (7th Cir.1989). We do not need to certify the question whether this case should form an exception to the requirement either, because that issue cannot be determinative of this case.