Linda K. STEPHENSON, April K. Stephenson, Terry W. Stephenson, Sr., Individually and as Personal Representative of the Estate of Terry Wayne Stephenson, Jr., Deceased, Plaintiffs–Appellants,

v.

Michael P.W. STONE, Secretary of the Army, Department of the Army, United States of America, et al., Defendants–Appellees.

No. 93–3170.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided April 5, 1994.

---

John H. Caress (argued), Indianapolis, IN, William L. Bracken, Greencastle, IN, for Linda K. Stephenson, April K. Stephenson, Terry W. Stephenson, Sr. plaintiff-appellant.

Barbara L. Herwig, Dept. of Justice, Civ. Div., Appellate Section, Jonathan T. Wein-berg (argued), U.S. Dept. of Justice, Civil/Appellate Div., Washington, DC, for Michael P.W. Stone, Department of the Army, U.S., Stanley D. Hansen, Joseph R. Sullivan, James M. Adkins, Regelio D. Mendoza, James E. Adams.

Before POSNER, Chief Judge, and BAUER, Circuit Judge, and NORGLE, District Judge.*

NORGLE, District Judge.

On a military base, in the early morning of July 7, 1991, Sergeant Timothy Karl Miller ("Sgt. Miller") entered Specialist E–4 Terry Wayne Stephenson's ("Spc. Stephenson") barracks through a window. Armed with a .44 caliber automatic pistol, Sgt. Miller shot Spc. Stephenson in the back of his head, killing him. Using the same pistol, Sgt. Miller took his own life later that morning.

Spc. Stephenson's next of kin, Linda K. Stephenson, April K. Stephenson, and Terry Wayne Stephenson, Sr., individually, and Terry Wayne Stephenson, Sr., as the Personal Representative of the Estate of Spc. Stephenson (collectively "Appellants"), filed a two count complaint on December 3, 1992 against the United States, the Department of the Army, Secretary of the Army Michael Stone, and five Army service-members. Count I sought damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h), alleging that Spc. Stephenson's death was caused by the Army's negligence. Count II sought damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), claiming the Army deprived Spc. Stephenson of his Constitutional rights by its reckless disregard for his safety. The district court dismissed both claims.

This appeal requires us to determine whether the district court was correct in concluding that the doctrine pronounced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) bars Appellants'

---

* Honorable Charles R. Norgle, Sr., of the Northern District of Illinois, Eastern Division, is sitting by designation.

claims. We conclude that the district court was correct, and we affirm.

## I.

The posture of this case requires us, as it did the district court, to accept as true all of the properly pleaded allegations in the complaint as well as the inferences reasonably drawn therefrom. *Mid American Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir.1993). According to the complaint, Spc. Stephenson served as an active-duty member in the Army and was stationed at Fort Irwin, California. Between December 1, 1990, and March 31, 1991, Sgt. Miller, one of Spc. Stephenson's superior officers, engaged in homosexual acts with Spc. Stephenson. After the sodomy was reported to the proper military authority, the Army initiated court-martial proceedings against Sgt. Miller for a violation of the Uniform Code of Military Justice. Spc. Stephenson was scheduled to testify against Sgt. Miller in the court-martial proceedings under a grant of immunity. Sgt. Miller, however, silenced Spc. Stephenson with his bullet.

The Army's alleged negligence occurred during the months preceding the shooting. Sgt. Miller had been reassigned to battalion headquarters because of the forthcoming court-martial proceedings. Army personnel diagnosed Sgt. Miller as suicidal. Sgt. Miller also threatened Spc. Stephenson's life on a number of occasions. These threats were reported to the Army. The complaint alleged that the Army did not successfully isolate Sgt. Miller from Spc. Stephenson, despite orders that the two were to remain apart and despite Sgt. Miller's threats of bodily harm.

The Army's negligence also arose from the method in which it handled the personal weapons of the service-members stationed at Fort Irwin. Sgt. Miller personally owned five firearms that were locked in the company arms room. Army regulations, rules, and operating procedures govern the storage of personal weapons. On April 12, 1991, Sgt. Miller retrieved five of his firearms from the arms room by following the applicable regulations. But on April 17th when he returned to restore the weapons to the arms case, Sgt. Miller did not return all five guns. Sgt. Miller instead left the arms room with his .44 caliber automatic pistol and stowed this gun in his barracks room. The military authorities did not have any immediate knowledge of Sgt. Miller's possession of his automatic pistol. The Appellants' position, however, is that the company armorer was careless in allowing himself to be distracted when Sgt. Miller purportedly returned his firearms, thus, allowing Sgt. Miller to surreptitiously retain his automatic pistol.

Army personnel later conducted an inspection of the arms room and discovered that Sgt. Miller's weapons case was locked, although all such cases were required to be unlocked for inspection and inventory. After the inspection, Sgt. Miller was asked to open the gun case on several occasions. Sgt. Miller, however, prevented the inspectors from discovering that he was in possession of his pistol. Specifically, Sgt. Miller declined requests from the company armorer to unlock the arms case and to allow an inspection. Although Sgt. Miller's superiors knew that the gun case was locked and unavailable for inspection, no action was taken to compel Sgt. Miller to comply with the Army directives. This was true even after Sgt. Miller's superiors received information that he was hiding a gun.

Appellants claim the Army should have transferred Sgt. Miller's private weapons to headquarters, properly inventoried his weapons, conducted effective training for the physical security of privately owned weapons, and searched Sgt. Miller's room after receiving information that he might have been hiding a gun in it.

On Appellees' motion, the district court dismissed both counts of Appellants' complaint. The district court held that the *Feres* doctrine barred the imposition of liability under the FTCA because Spc. Stephenson's death was incident to his military service. Because the death was incident to service, Appellants' *Bivens* action was barred as well pursuant to *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). Appellants appeal this decision, arguing that the risk of being murdered by a

maniacal, suicidal commanding officer is not a risk that service-members assume incident to their service in the military and, therefore, the district court erred in dismissing the suit.

We conclude that the *Feres* doctrine bars Appellants' claims arising out of the death of Spc. Stephenson while on active duty at the Fort Irwin military base and arising from the alleged negligence of military personnel in the performance of their official duties.

## II.

■■■ The FTCA serves as a broad waiver of federal sovereign immunity. *Kosak v. United States,* 465 U.S. 848, 852, 104 S.Ct. 1519, 1522–23, 79 L.Ed.2d 860 (1984); *see United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402–03, 95 L.Ed. 523 (1951) ("The [FTCA] waives the Government's immunity from suit in sweeping language."). The FTCA allows individuals to sue the government for personal injuries or death under circumstances where the government would be liable if it were a private individual, and in accordance with the law of the state where the wrongful conduct occurred. 28 U.S.C. § 1346(b). Thus, individuals are generally capable of recovering from the government and its agencies for injuries sustained as a result of a government employee's negligence.

Congress recognized that the government's sovereign immunity performs an important function in many instances, however. As a result, Congress enumerated a number of exceptions where the government would retain its sovereign immunity. 28 U.S.C. § 2680. An exception pertinent to our discussion is where injuries result from the combatant activities of the military during war-time. *Id.* at § 2680(j).

In 1950, however, the United States Supreme Court construed the waiver of sovereign immunity for the armed forces narrower than it appeared at first glance. In *Feres,* the Court held that service-members could not recover under the FTCA for those injuries arising out of or that are sustained in the course of activity incident to their military service and, thus, restored the government's sovereign immunity under those circum-

stances. *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. The Supreme Court concluded that Congress did not intend by the FTCA for service-members to sue the government for negligence when their injuries occurred "while on active duty and not on furlough," even if the injuries arose from noncombat activities during peacetime. *See id.* at 138, 71 S.Ct. at 155.

Notwithstanding Appellants' insistence that *Feres* stands on weak ground when the plain language of the military exception of 28 U.S.C. § 2680(j) is considered, the *Feres* doctrine has become "black letter law." *See Duffy v. United States,* 966 F.2d 307, 312 (7th Cir.1992) ("*Feres* is alive and well."); *Rogers v. United States,* 902 F.2d 1268, 1271 (7th Cir.1990) (*Feres* exception has been repeatedly reaffirmed by majority of the United States Supreme Court). We have recognized the three surviving precepts of the *Feres* doctrine: (1) the doctrine protects the distinctive federal relationship between the government and the armed forces, which may be undermined by idiosyncrasies between the individual states' distinctive tort laws; (2) the doctrine promotes the existence of other statutory systems of compensation for service-members; and (3) the doctrine promotes military discipline and effectiveness. *Duffy,* 966 F.2d at 312 (citing *United States v. Johnson,* 481 U.S. 681, 688–91, 107 S.Ct. 2063, 2067–68, 95 L.Ed.2d 648 (1987)); *M.M.H. v. United States,* 966 F.2d 285, 287 (7th Cir.1992).

■■ The dispositive inquiry remains whether the service-member standards in the type of relationship to the military at the time of his or her injury that the occurrences causing the injury arose out of activity incident to military service. *Duffy,* 966 F.2d at 312 (quoting *Rogers,* 902 F.2d at 1272). Although the *Feres* doctrine is not subject to any bright-line rules—each case being entitled to an independent examination, *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042–43, 87 L.Ed.2d 38 (1985)—we have consistently found that a service-member's injury is incident to military service whenever the injury is incurred while the individual is on active duty or subject to military discipline. *See Collins v. United*

*States*, 642 F.2d 217, 219 (7th Cir.), *cert. denied*, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981); *see also Chappell v. Wallace*, 462 U.S. 296, 299, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) (Congress did not intend government to be subject to suits for injuries suffered in service by members of Armed Forces); *M.M.H.*, 966 F.2d at 288–89 (Army's post-discharge negligence actionable only if the negligent act constituted a new and independent tort after service-member was discharged from active duty); *Duffy*, 966 F.2d at 312 (reservist's claim that he was illegally called into active duty barred by *Feres* because the reservist military status was the *sine qua non* for the call to active duty); *compare United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) (permitting action when injury occurred subsequent to discharge). As we explained in *Rogers*, suits by veterans and civilians alike against the military do not raise issues of discipline, supervision, and control to nearly the same degree as do suits by service-members. *Rogers*, 902 F.2d at 1274.

Appellants' case, thus, succumbs to the legitimacy of the *Feres* doctrine. This becomes apparent because the circumstances surrounding Spc. Stephenson's death are strikingly similar to those presented in the *Feres* case itself. The decedent in *Feres* died when a fire destroyed the barracks which he was occupying while on active duty in service of the Army. *Feres*, 340 U.S. at 137, 71 S.Ct. at 155. Because "the relationship of military personnel to the Government has been governed exclusively by federal law," the United States Supreme Court recognized that Congress did not intend to formulate "a new cause of action dependent on local law for service-connected injuries or death due to negligence." *Id.* at 146, 71 S.Ct. at 159. Spc. Stephenson's death similarly occurred while he was housed in the barracks and on active duty, under military orders. The same concerns in the *Feres* case are, therefore, implicated in this case: the distinctive federal nature of the relationship between an active-duty service-member and the Army. *See id.* at 143–44, 71 S.Ct. at 157–58.

Most damaging to Appellants' appeal is the *Shearer* case, which manifests solid parallels to this case. In that case, the plaintiff's decedent, an Army private, was kidnaped and murdered by another service-member. *Shearer*, 473 U.S. at 53, 105 S.Ct. at 3040–41. The alleged negligence of the Army included that the Army knew that the other service-member, who had earlier been convicted of manslaughter, was dangerous and that the Army failed to sufficiently control him or warn others of his presence on the base. *Id.* at 54, 105 S.Ct. at 3041. Likewise, Spc. Stephenson's life became endangered because of Sgt. Miller's threats and volatile condition, of which the Army possessed knowledge, and because of the Army's failure to supervise Sgt. Miller or prevent him from acquiring his personal weapon.

The *Shearer* Court found that the plaintiff's suit was barred by *Feres* even though the decedent was off-duty and away from the Army base at the time of the kidnapping and ensuing death. The Supreme Court determined that "the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline . . . ." *Id.* at 57, 105 S.Ct. at 3043 (citations omitted). Importantly, the Supreme Court declared that the military's "basic choices about the discipline, supervision, and control of a serviceman" are matters directly involving the management of the military which are not to be challenged through use of the FTCA. *Id.* at 58, 105 S.Ct. at 3043. The Court emphasized that claims challenging the decisions of command would permit the judiciary to invade sensitive military affairs and to defeat military discipline and effectiveness. *Id.* at 59, 105 S.Ct. at 3043.

In arguing that command decisions are not implicated by this case and that military discipline is not threatened, Appellants advance an inventive distinction for *Shearer*. At oral argument, Appellants maintained that their case does not directly question the Army's commands, orders, and regulations because explicit violations of the command decisions, orders, and regulations can be appraised without second-guessing the propriety of the rules themselves. Thus, anytime specific allegations of a violation of rules,

regulations, or orders are involved which do not question command decisions, as opposed to broad, "non-specific" allegations of general negligence directed toward the judgment of a decisionmaker, the courts should make the negligence actionable.

This distinction is quixotic. *Shearer* counsels us that claims such as Appellants' do involve challenges to decisions of command and the management of the military and are, therefore, the types of claims that would implicate sensitive military affairs and effectively impede military discipline and effectiveness. *Id.* at 59, 105 S.Ct. at 3043. This is true notwithstanding that the Army's decisions were framed by orders, regulations, and rules. First, the present claim would require the judiciary to become involved in sensitive military policies. The Army's arguably languid response to allegations of homosexual conduct, and the opprobrium which conceivably led to Spc. Stephenson's death, are indeed profound policy issues. Second, because of the "peculiar and special relationship" between soldiers and their superiors, the maintenance of the case *sub judice* would permit the district court to second-guess the implementation of military orders or to appraise alleged negligent acts or omissions committed in the course of military duty. This is exemplified by the Appellants' criticism of the Army's failure to enforce its segregation order, to expropriate Sgt. Miller's private weapons, to inventory his weapons, and to train its armorers properly. The alleged negligence of the Army in this case is, therefore, directly linked to its discipline, supervision, and control over both Sgt. Miller and Spc. Stephenson, as well as over the entire ranks at the Fort Irwin Army base. *See id.* at 58, 105 S.Ct. at 3043.

Third, whether the command decisions of the Army or the absence of certain decisions by military officials in the present case constituted negligence is not for the civilian courts to decide. " '[C]ourts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' " *Chappell*, 462 U.S. at 305, 103 S.Ct. at 2368 (quoting Warren, *The Bill of Rights and the Military*, 37 N.Y.U.L.REV. 181, 187 (1962)). The judiciary is "not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). That responsibility remains with Congress and with the President of the United States and his subordinates. *Id.* Matters involving the "pattern of training, weaponry and orders" of the armed forces are undoubtedly the type of matters intended to be left to other branches of government, not to be interfered with by an inquisition from the judicial branch no matter how specific the allegations of negligence may be. *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445–46, 37 L.Ed.2d 407 (1973).

We agree with the district court that Spc. Stephenson's death was incident to military service. Spc. Stephenson's death occurred while he was an active duty member of the Army and subject to military discipline, orders, and control. Further, his death occurred on military property and in the barracks to which he was assigned. Spc. Stephenson's death occurred because of his military relationship with the government and, therefore, was incident to service. *See Johnson*, 481 U.S. at 689, 107 S.Ct. at 2068. Moreover, Spc. Stephenson's death was caused by the negligence of military personnel in the performance of official, military duties. Accordingly, the district court properly dismissed Appellants' claim under the FTCA pursuant to *Feres*.

### III.

Appellants concede that their *Bivens* claim also hinges on the *Feres* "incident to service" test. *See Stanley*, 483 U.S. at 683–84, 107 S.Ct. at 3064; *Chappell*, 462 U.S. at 298–99, 103 S.Ct. at 2364–65. For the same reasons the Appellants' claim under the FTCA fails, the district court properly dismissed the *Bivens* claim.

The judgment of the district court is AFFIRMED.