**Gregory MAAS, Frank Felinski, Richard Sciaraffa, and Gregory Binnebose, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 95 C 0943.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 23, 1995.

---

Lawrence W. Leck and Julie Marie Bordo, Lawrence W. Leck & Associates, Chicago, IL, for plaintiffs.

James G. Touhey, Jr., Paul F. Figley, and Jeffrey Axelrad, Torts Branch, U.S. Dept. of Justice, Washington, DC, and Thomas P. Walsh, Assistant U.S. Attorney, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiffs Gregory Maas, Gregory Binnebose, Frank Felinski, and Richard Sciaraffa are former members of the United States Air Force who were assigned to clean up debris from an airplane crash involving nuclear weapons in early 1968. Maas and Binnebose have developed cancers which they allege were caused by their exposure to low level dosages of ionizing radiation during the clean-up project; Felinski and Sciaraffa suffer from sterility allegedly as a result of their exposure. Plaintiffs bring their action pursuant to the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 2671 et seq. Jurisdiction is proper under 28 U.S.C. § 1346.

Counts I and II of the first amended complaint charge the United States with post-discharge negligence for its failure to inform, warn, and test Maas and Binnebose when it learned that they had been exposed to dangerous doses of radiation. Counts III through VI allege that all four veterans sustained injury as a result of participation in an ultra-hazardous activity. The United States

has moved to dismiss for lack of subject matter jurisdiction, arguing that the FTCA does not permit military personnel to bring negligence actions which arise from activities incident to service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In the alternative, the United States argues that plaintiffs' claims are barred by the foreign country and discretionary function exceptions to the FTCA. For the reasons given below, defendant's motion will be granted.

## BACKGROUND

On a motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences therefrom are drawn in plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993), *Stephenson v. Stone,* 21 F.3d 159, 161 (7th Cir.1994). "Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir.1992).

On January 21, 1968, a B–52 U.S. Air Force aircraft carrying four thermo-nuclear hydrogen bombs crashed near Thule, Greenland. Plaintiffs were assigned to "Project Crested Ice" in late January 1968 to clean up the debris, which consisted of thousands of fragments of aircraft and weapons scattered across the countryside. The two-month clean-up was conducted under onerous conditions in almost total darkness, with temperatures reaching −50 degrees Fahrenheit, winds in excess of seventy miles per hour, and wind-chills of −100 degrees Fahrenheit.

At the time of the clean-up, the government knew of the risk of radiation exposure, particularly regarding plutonium and tritium. Although the government conducted tests for exposure, it was also aware, according to the complaint, that its tests were compromised by the extreme climatic conditions in Thule. For at least three years after the conclusion of Project Crested Ice, the United States continued to periodically test participants who remained on active duty. Maas was

discharged in September 1968 and Binnebose was discharged in August 1970. The complaint is silent regarding additional testing of either plaintiff while on active duty.

Sometime during the 1980's, the United States government became aware of the effects of low level dosages of ionizing radiation on human health. It knew that hundreds of military personnel had been exposed to such radiation at the time of Project Crested Ice. By 1989, the complaint alleges, the United States government was aware that Project Crested Ice participants were more likely to develop certain cancers as a result of their exposure, but failed to warn them of their increased risks. The plaintiffs argue that the government assumed a duty of care in 1968 when it began to test for radiation exposure and it breached that duty by failing to inform plaintiffs of the new findings.

In late 1991, Maas was diagnosed with colon cancer. Binnebose was diagnosed with T–Cell Lymphoma in 1994. Both men allege that as a result of their exposure to excessive radiation they developed cancer. They further allege that as a result of the government's failure to warn, they sustained delay in the diagnosis and treatment of their diseases.

Plaintiffs Felinski and Sciaraffa also participated in Project Crested Ice and allege that as a result of their exposure to excessive amounts of radiation they became sterile, have been otherwise injured and have endured pain and suffering as well as loss of enjoyment of life.

On March 7, 1994, Maas and Sciaraffa filed administrative claims with the United States Air Force and the Department of Defense. Felinski followed on March 28, 1994, while Binnebose filed on July 12, 1994. In each case, no final disposition had been reached within six months of filing the claim. The plaintiffs therefore exercised their option to deem their claims finally denied and to bring an action in federal court. 28 U.S.C. § 2675(b). Plaintiffs Maas and Binnebose seek $4.5 million each in damages, while plaintiffs Sciaraffa and Felinski seek $2 million apiece.

### FERES DOCTRINE

■ The FTCA acts as a broad waiver of sovereign immunity. It permits individuals to sue the federal government for personal injuries or death under circumstances where the government would be liable if it were a private citizen, and in accordance with the law of the state where the wrongful conduct occurred. 28 U.S.C. § 1346(b). *Stephenson,* 21 F.3d at 162. The United States retains immunity from suit for claims arising under certain circumstances, including claims arising out of combatant activity of the armed forces during times of war, 28 U.S.C. § 2680(j); claims arising in a foreign country, 28 U.S.C. § 2680(k); or claims arising from discretionary acts or omissions of government employees, 28 U.S.C. § 2680(a).

■ None of the statutory exceptions to the FTCA expressly cover negligent acts by military personnel during peacetime. Nonetheless, the Supreme Court has repeatedly held that the FTCA does not waive immunity for claims brought by military personnel who suffer injuries "which arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159; *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977); *United States v. Johnson,* 481 U.S. 681, 686, 107 S.Ct. 2063, 2067, 95 L.Ed.2d 648 (1987). An injury is incident to military service "whenever the injury is incurred while the individual is on active duty or subject to military discipline." *Stephenson,* 21 F.3d at 162. Thus, a service member alleging negligence on the part of military personnel may only bring an action under the FTCA when it is predicated upon negligence which occurred following discharge. *M.M.H. v. United States,* 966 F.2d 285, 287 (7th Cir.1992).

■ Plaintiffs claim that their exposure to dangerous radiation levels during Project Crested Ice proximately caused their illnesses. The alleged negligence occurred while plaintiffs were on active duty, and their claims are therefore barred under the *Feres* doctrine, even though their illnesses ap-

peared long after discharge. *Rogers v. United States,* 902 F.2d 1268, 1273 (7th Cir.1990).

While the *Rogers* court did not address the question of radiation-induced cancer, it found the issue analogous to the facts before it, which involved negligence leading to a false arrest for desertion. "In the present case, the Navy's initial error appears to have been in failing to properly classify Rogers on his purported exit from the Navy. Like an incipient cancer cell, that mistake would release its harm years later." (citing with approval *Monaco v. United States,* 661 F.2d 129, 133 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982) (no subject matter jurisdiction for claims alleging exposure to nuclear testing led to cancer). *See also Laswell v. Brown,* 683 F.2d 261, 265 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983) (same); *Lombard v. United States,* 690 F.2d 215, 221 (D.C.Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983) (same); *Gaspard v. United States,* 713 F.2d 1097, 1100–01 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984) (same).

■ Although this would appear to end the matter, plaintiffs argue that the *Feres* doctrine is a judicially created exception which only applies in circumstances where Congress has provided "systems of simple, certain and uniform compensation for injuries or death of those in the armed forces." *Feres,* 340 U.S. at 144, 71 S.Ct. at 158. They note that unlike military personnel exposed to radiation as the result of the explosions over Hiroshima and Nagasaki or onsite participation in atmospheric nuclear testing, Congress has never addressed their situation. *See* 38 U.S.C. § 1112. As they note in their complaint, if the *Feres* doctrine is applied, they will have no recourse for exposure which is arguably just as deadly as that experienced by earlier veterans.

In its present form, the *Feres* doctrine rests on three precepts:

(1) the doctrine protects the distinctive federal relationship between the government and the armed forces, which may be undermined by idiosyncrasies between the individual states' distinctive tort laws; (2) the doctrine promotes the existence of other statutory systems of compensation for service members; and (3) the doctrine promotes military discipline and effectiveness.

*Stephenson,* 21 F.3d at 162; *Duffy v. United States,* 966 F.2d 307, 312 (7th Cir.1992) (citing *Johnson, supra,* 481 U.S. at 688–91, 107 S.Ct. at 2067–69). Plaintiffs focus exclusively on the second precept, taking it to mean that the absence of alternate compensation authorizes plaintiffs to seek a judicial remedy. The "simple, certain, and uniform" benefits referred to by the *Feres* court, however, are those benefits available to all veterans injured or killed as a result of military service. *See Johnson,* 481 U.S. at 690, 107 S.Ct. at 2068 ("The Court in *Feres* found it difficult to believe that Congress would have provided such a comprehensive system of benefits while at the same time contemplating recovery for service-related injuries under the FTCA."); *Lombard,* 690 F.2d at 219.

Moreover, the Supreme Court has rejected plaintiffs' analysis in another context, noting that the critical question "is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." *United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987).[1] The existence of special compensation provisions for military personnel, such as those adopted to assist individuals exposed to radiation following nuclear explosions, is further evidence of the remedial scheme envisioned in *Feres.*

"Sovereign immunity may produce harsh results; the sovereign can, of course do wrong." *Rogers,* 902 F.2d at 1274. For

---

1. In *Stanley,* the court addressed the question of whether a former serviceman who unknowingly participated in LSD experiments could bring a *Bivens* action against his superiors. The court noted that the underlying premises which formed the basis for the *Feres* doctrine were equally applicable to *Bivens* actions. *Stanley,* 483 U.S. at 680, 107 S.Ct. at 3062. Consequently, the Court's refusal to examine the particular compensation scheme available in *Stanley* controls in actions arising under the FTCA as well.

purposes of the motion to dismiss, the tragic illnesses suffered by plaintiffs were caused by their exposure to excessive radiation while on active military duty. Accordingly, the *Feres* doctrine applies and Claims III through VI will be dismissed.

In Counts I and II, plaintiffs Maas and Binnebose allege post-discharge negligence, arguing that the government's failure to inform them of their increased risk of cancer led to delayed diagnosis and treatment. Under the *Feres* doctrine, actions for negligence may be brought only in cases where the government committed a new and independent tort after discharge which caused the plaintiff further damages. *M.M.H.*, 966 F.2d at 288 and n. 2. "*Feres* bars suit when the government's failure to warn or treat the plaintiff constitutes a continuation of the earlier, noncompensable tort." *Id.*

Plaintiffs argue that because the government assumed a duty of care to monitor the Project Crested Ice participants in 1968, its failure to inform them of new information regarding the hazards of low level radiation exposure constitutes a new and independent tort. In essence, plaintiffs argue that they were tested at a time when "a different understanding prevailed within the scientific community as to what constituted dangerous levels of radiation exposure." Pl. Brief at 5. The existence of new scientific information, coupled with the knowledge that the testing conditions in Greenland were compromised by the severe weather, created a new duty on the part of the government to inform, warn, and test those veterans who participated in Project Crested Ice.

The United States argues that plaintiffs have merely alleged a continuation of a pre-discharge failure to warn, rather than an independent tort. The government notes that the complaint alleges that Air Force personnel were aware of the hazards of radiation at the time and they knew that the tests conducted were unreliable. Thus, any

duty to warn arose prior to discharge, and any subsequent duty must be viewed as a continuation of the earlier tort.

The government bases its position on a series of circuit court decisions barring post-discharge negligence claims for service-members who participated in the military's nuclear testing program after World War II. *See Laswell*, 683 F.2d at 266–67; *Lombard*, 690 F.2d at 220; *Gaspard*, 713 F.2d at 1100–01.[2] In short, this line of cases assumes that the government's failure to warn of the hazards of radiation at the time of the exposure bars the possibility of a future duty to warn based on new scientific evidence. Such cases involve an act of negligence which takes place on active duty and then remain uncorrected after discharge. *M.M.H.*, 966 F.2d at 288.

The Seventh Circuit, however, has explicitly rejected the reasoning of *Laswell* and similar cases in *M.M.H.*, a case of first impression in this circuit. In *M.M.H.*, the court held that failure to inform a former service member that she had been incorrectly diagnosed as HIV-positive during her military service constituted a new and independent tort for purposes of the *Feres* doctrine. *M.M.H.*, 966 F.2d at 288. Shortly after plaintiff was honorably discharged because of her illness, United States Army personnel learned that plaintiff was not infected with HIV, but never contacted her. The plaintiff, who attempted suicide, did not learn her true condition until she received the results of an independent blood test conducted by a private physician. *Id.* at 286–87.

In reversing the district court's order granting summary judgment, the court noted that plaintiff's suit was "not based on the army's initial misdiagnosis of her condition, which caused her emotional distress in the first instance, but on the army's failure to correct that misdiagnosis promptly, which may have aggravated her emotional distress or allowed it to continue longer than it would have otherwise." *Id.* at 288.

**2.** The *Gaspard* court specifically rejected the plaintiff's arguments that new scientific evidence created an independent tort. It noted that the complaint charged that the government knew even at the time of testing "that radiation expo-

sure was harmful, even deadly." *Gaspard*, 713 F.2d at 1101. Plaintiffs could not show, therefore, that there had been such a dramatic increase in scientific knowledge that created a new duty to warn. *Id.*

The Seventh Circuit rejected the government's argument, similar to the issue raised in this case, that a claim involving aggravation of an injury which occurred while on active duty is merely a continuation of the first tort. In reaching this decision, the court reviewed decisions of other circuits, many of which involved post-discharge negligence claims arising from the military's nuclear testing programs conducted following World War II. The court rejected the *Laswell* line of cases in favor of decisions recognizing the possibility of a new and independent tort when the claim involved aggravation of injury. *See Broudy v. United States*, 661 F.2d 125, 128 (9th Cir.1981) (in suit for negligent failure to warn, monitor, and treat servicemen exposed to radiation, *Feres* would not bar claim of post-discharge negligence if government learned of danger after discharge); *Cole v. United States*, 755 F.2d 873, 876–77 (11th Cir.1985) (same); *Everett v. United States*, 492 F.Supp. 318, 325–26 (S.D.Ohio 1980) (same). The court noted, however, that under this theory, injury must be proportioned such that a plaintiff may recover "only to the extent that defendants' post-discharge negligence aggravated or prolonged his condition." *M.M.H.* at 289 (citation omitted).

Like M.M.H., Binnebose and Maas raise their post-discharge negligence claims in order to recover for the aggravation of their injuries, not for the injuries themselves. The government correctly notes that plaintiffs have made some allegations inconsistent with their claim for aggravation of injury. Within Counts I and II, plaintiffs allege that the military knew the hazards of radiation and knew that the tests it conducted during Project Crested Ice were compromised by the cold weather. Plaintiffs also allege that the government assumed a duty to test them at the time they participated in the clean-up.

The government suggests that such facts and pleadings take this case out of the realm of *M.M.H.* It argues that plaintiffs are pleading a failure to act which began at the time of Project Crested Ice and continues to the present day. Consequently, the government insists that determination of their motion to dismiss should be guided by *Laswell, et al.*

Despite some inconsistencies, Counts I and II of the complaint are fundamentally claims for aggravation of injury, and therefore *M.M.H.* controls. While plaintiffs do make claims regarding the government's knowledge at the time of Project Crested Ice, their complaint also indicates that they believe that the government thought that the radiation levels to which they had been exposed were safe. Only in 1989 did it become obvious that Project Crested Ice put them at risk. This suggests that plaintiffs do not seek to hold the government accountable for any failure to inform or test arising from their pre-discharge exposure to radioactive material. Instead, plaintiffs seek recovery for negligence which they believe occurred following the release of studies which identified heightened risks associated with exposure to low-level dosages of radiation. In plaintiffs' view, the government then had the duty to warn them that the levels of radiation they had been exposed to were not, after all, safe.

Under the position adopted by the Seventh Circuit in *M.M.H.*, plaintiffs' post-discharge negligence claims are not barred by the *Feres* doctrine. The *Feres* doctrine does, however, sharply curtail the breadth of plaintiffs' claims, limiting the scope of this case solely to those issues raised by a claim for aggravation of injury.

### FOREIGN COUNTRY EXCEPTION

■ The government argues, however, that if the *Feres* doctrine does not apply, the FTCA nonetheless bars this suit on other grounds. The government notes that the FTCA does not waive immunity for "[a]ny claims arising in a foreign country." 28 U.S.C. § 2680(k). This issue is now moot as the only claims remaining relate to the government's failure to warn some twenty years after the incident. The government does not contend that the relevant decisions took place in a foreign country, and therefore this argument need not be addressed.

## DISCRETIONARY FUNCTION EXCEPTION

 While *M.M.H.* permits post-discharge actions based on a claim that the failure to warn aggravated a pre-existing injury, the *M.M.H.* court did not address another possible bar to failure to warn claims. In this case, the government has raised the discretionary function exception to the FTCA, arguing that the decision to warn hundreds of veterans that they were exposed to more dangerous levels of radiation than described twenty years ago involves policy decisions outside the scope of the FTCA. The government specifically argues that plaintiffs have failed to meet the pleading standard necessary to overcome this exception. Because existing authority supports this position, plaintiffs' remaining claims will also be dismissed.

 The FTCA expressly excludes any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a). This exclusion covers only acts that are discretionary in nature, requiring an element of judgment or choice. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Rothrock v. United States,* 62 F.3d 196, 198 (7th Cir.1995). The government alleges that the decision whether or not to inform, warn, and test veterans who participated in Project Crested Ice based on new studies is purely discretionary. Therefore, plaintiffs improperly seek judicial intervention in a legislative or administrative decision "grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir.1995).

 Lack of jurisdiction under the discretionary function exception arises when the alleged negligent acts or omissions 1) involve an element of judgment or choice; and 2) are related to considerations of public policy. *Bailor,* 51 F.3d at 685. Thus, for a complaint to survive a motion to dismiss under this exception, "it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can

be said to be grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. at 1275.

Plaintiffs acknowledge in their complaint that the decisions to clean up the debris from the crash and to expose them to radioactive material were discretionary. They assert that subsequent decisions, however, were operational because they flowed from the initial exercise of discretion. The complaint alleges facts which indicate that a decision to institute a new comprehensive program to inform, warn, and test hundreds of veterans regarding possible more severe effects of radiation exposure than originally evaluated involves policy decisions.

This deficiency in the pleadings is fatal in light of the Ninth Circuit's holding in *In re Consolidated United States Atmospheric Testing Litigation,* 820 F.2d 982 (9th Cir. 1987), *cert. denied, sub. nom. Konizeski v. Livermore Laboratories,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). Allegations that the government negligently failed to warn discharged veterans who participated in nuclear testing programs were found to be barred by the discretionary function exception. The decision to warn, test, and counsel necessarily involved "the exercise of judgment and discretion at high levels of government." *Id.* at 997.

> Courts cannot be considered qualified to evaluate such a decision and any attempt to do so is likely to interfere with important governmental activities. Formulating and issuing warnings requires the government 'to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.' *Varig,* [*supra*] 467 U.S. at 820, 104 S.Ct. at 2767. The conclusion is inescapable that every aspect of a warning program is a matter that falls within the discretionary function exception.... 'Where there is policy judgment and decision there is discretion.' *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953).

*In re Atmospheric Testing,* 820 F.2d at 998.

The Ninth Circuit's holding does not suggest that all failure to warn claims are

doomed under the discretionary function exception. *M.M.H.* represents a situation where little is required of the allegedly negligent actor. Informing M.M.H. that she had been misdiagnosed did not require policy decisions; it required a simple call or letter, one that could have been made within days of M.M.H.'s discharge. In contrast, the duty to notify atmospheric testing veterans could not be undertaken without significant expenditures of time and money, and required the government to publicly admit error.

Plaintiffs argue that their case is like *M.M.H.* because the government tested them during Project Crested Ice, and told them that the only real danger was temporary or permanent sterility. They argue that by testing them during the Project, the government assumed a duty to inform them at a later date that their prognosis had changed. Not only does this argument raise the specter of a continuing tort, which would bar plaintiffs' claims under *Feres,* it also illustrates the significant differences between *M.M.H.* and the present case.

The duty plaintiffs describe in their complaint is more complicated and costly than that required in *M.M.H.* As currently pled, plaintiffs believe that the government had the duty to inform, warn, and test them. They allege that hundreds of veterans were exposed to radiation as a result of Project Crested Ice and submit 11 signed claims from Project Crested Ice veterans other than plaintiffs to show the severity of the illnesses alleged. Notification of hundreds of veterans some twenty years after the event of possible more serious effects of radiation exposure requires judgments invoking policy decisions. Plaintiffs' assertion that all such actions are operational is insufficient to overcome the determination that programs to inform, warn, and test former military personnel involve policy based decision-making.

Moreover, plaintiffs have pointed to no statutes or regulations which would require the military to undertake such a program and thus remove the duty from the discretion of military officials. *See Cisco v. United States,* 768 F.2d 788, 789 (7th Cir.1985). The Seventh Circuit held in *Cisco* that in the absence of specific requirements to warn, the Environmental Protection Agency's failure to warn residents that a landfill contained dioxin contaminated dirt, as well as the failure to remove the dirt, were discretionary acts involving political, social and economic judgments. Therefore, the FTCA did not apply. *Id.* at 790. As in *Cisco,* whether or not the military acted negligently or abused its discretion is immaterial if such actions were discretionary in nature. *Id.* at 789.

Ultimately, the plaintiffs have failed to allege facts in their complaint which overcome the discretionary function exception to the FTCA. Counts I & II of their complaint will therefore be dismissed. Because the complaint will be dismissed in its entirety, the government's venue challenge need not be addressed.

IT IS THEREFORE ORDERED that defendant's motion to dismiss is granted. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' cause of action with prejudice.