Michael J. ROTHROCK and Edelle Rothrock, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–3965.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1995.

Decided Aug. 7, 1995.

Peter C. King (argued), J. Kevin King, Cline, King & King, Columbus, IN, for Michael J. Rothrock and Edelle Rothrock.

Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, IN, Paul F. Figley, Elizabeth A. Russell (argued), Dept of Justice, Torts Branch, Civ. Div., Washington, DC, for U.S.

Before CUMMINGS, ESCHBACH, and RIPPLE, Circuit Judges.

ESCHBACH, Circuit Judge.

Michael and Edelle Rothrock ("Rothrocks") appeal the district court's dismissal of their action for lack of subject matter jurisdiction. The district court held that the Rothrocks' complaint, brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, was barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). It also denied the Rothrocks' motion for an extension of time to conduct additional discovery. We affirm.

I.

On November 7, 1991, Michael Rothrock was traveling in the northbound lane of Interstate 65 across a bridge north of mile marker 76 in Bartholomew County, Indiana, when his car rolled down a steep embankment adjacent to the north exit of the bridge. Rothrock was left paralyzed by the accident. According to the Rothrocks, the accident was caused by the absence of a guardrail at the point in the bridge where the car slid down the embankment. Apparently, a guardrail had been installed when the State of Indiana first built Interstate 65 in the early 1960's under the Federal–Aid Highway Act, whereby states are provided with federal funds for state highway projects. In 1988, however, when the State resurfaced the bridge through a grant of federal funds, the guardrail was removed from the spot in question.

On July 1, 1994, the Rothrocks sued the United States under the Federal Tort Claims Act to recover for Michael Rothrock's injuries. The Rothrocks contend that the Federal Government is liable for failing to ensure, as a condition of its funding decision, that the bridge was constructed in accordance with the safety standards it references for such decisions, including those adopted by the American Association of State Highway Traffic Officials ("AASHTO"). On September 6, 1994, the United States moved to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the decision whether to enforce certain safety guidelines in funding Indiana's highway construction is protected by the discretionary function exception to the FTCA. In response, the Rothrocks moved for an extension of time to conduct further discovery they deemed necessary to respond to the motion. The district court denied the Rothrocks' request for an extension of time and the United States moved for a protective order upon receiving the Rothrocks' discov-

ery requests. On November 17, 1994, the district court granted the United States' motion to dismiss for lack of subject matter jurisdiction and denied the United States' motion for a protective order as moot. The Rothrocks filed a timely notice of appeal.

## II.

■ The central question in this case is whether the discretionary function exception to the United States' waiver of sovereign immunity in the FTCA applies so as to bar subject matter jurisdiction. We review *de novo* the district court's dismissal of a complaint under Rule 12(b)(1). *Young v. Northern Ill. Conference of United Methodist Church*, 21 F.3d 184, 185 (7th Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 320, 130 L.Ed.2d 281 (1994).

The FTCA is a "broad waiver of sovereign immunity." *Berkovitz v. United States*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). There are, however, a number of exceptions to this statute whereby the United States retains its immunity from suit.[1] Under § 2680(a), no liability against the United States shall lie if a claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." According to several recent Supreme Court cases, *see, e.g., United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958, there are two factors in determining whether this "discretionary function" exception bars a plaintiff's suit against the United States. First, the exception "covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273, (quoting *Ber-*

*kovitz*, 486 U.S. at 536, 108 S.Ct. at 1958). Thus, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* Second, "even 'assuming the challenged conduct involves an element of judgment,' it remains to be decided 'whether that judgment is of the kind that the discretionary function was designed to shield.'" *Gaubert*, 499 U.S. at 322–23, 111 S.Ct. at 1273 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959). Since the purpose of the exception was to prevent "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy," *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1959 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2756, 81 L.Ed.2d 660 (1984)), it "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537, 108 S.Ct. at 1959.

■ A brief discussion of the statutes and regulations involved in this case amply illustrates the substantial discretion afforded to the Government agents in deciding whether to enforce its safety standards in funding Indiana's bridge resurfacing. The Federal–Aid Highway Act, 23 U.S.C. §§ 101–58, was intended to accelerate the construction of the nation's highway system through federal grants to state highway construction projects. 23 U.S.C. § 101(b). Under this system, states seeking funding must submit all plans, specifications, and estimates to the Secretary of Transportation for approval. 23 U.S.C. § 105(a) and 106(a). The Secretary is directed not to approve such funding requests

> if they fail to provide for a facility (1) that will adequately meet the existing and probable future traffic needs and conditions in

---

1. The parties engage in a skirmish over the burden of proof in this case. The Rothrocks assert, relying upon *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir.1952), that the United States bears the burden of proving the application of the exemption. *Stewart* held that an attempt to raise an FTCA exception had been waived when it was raised after the lower court's judgment for the government was reversed. *Id.* The United

States responds that § 2680 sets the terms of the United States' consent to be sued and therefore the parameters for subject matter jurisdiction. Thus, facts overcoming them must be pled in the complaint. We need not resolve this question since, regardless of which party has the burden of proof, the statutes and regulations involved are sufficient to establish the protection from suit under the exceptions to the FTCA.

a manner conducive to safety, durability, and economy of maintenance; (2) that will be designed and constructed in accordance with standards best suited to accommodate the foregoing objectives and to conform to the particular needs of each locality.

23 U.S.C. § 109(a). In making this clearly discretionary judgment, Congress directs the Secretary to formulate guidelines for the approval of projects "in the best overall public interest," taking into account such considerations as safety, efficiency, and cost. 23 U.S.C. § 109(h). The statute also directs the Secretary to consider the following factors:

  (1) air, noise and water pollution;

  (2) destruction or disruption of man-made and natural resources, aesthetic values, community cohesion and the availability of public facilities and services;

  (3) adverse employment effects, and tax and property value losses;

  (4) injurious displacement of people, businesses and farms; and

  (5) disruption of desirable community and regional growth.

23 U.S.C. § 109(h). The sheer number of factors involved suggests that Congress intended these decisions to be made as an exercise of judgment and choice. *See Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. The Secretary has delegated the responsibility of approving projects and developing these guidelines to the Federal Highway Administration ("FHWA"), an agency within the Department of Transportation. In approving bridge projects, the FHWA specifically references the AASHTO safety standards. *See* 23 C.F.R. § 625.4(b); 23 C.F.R. § 650.405(b)(2). However, projects may be approved despite nonconformance to these standards "where conditions warrant that exceptions be made ... after due consideration is given to all project conditions such as maximum service and safety benefits for the dollar invested...." 23 C.F.R. § 625.3(f)(1)(ii) and (2). Thus, in deciding whether to fund Indiana's bridge resurfacing project despite the alleged

nonconformance with certain AASHTO standards, the FHWA is charged with balancing a mix of factors such as cost and safety. This is inherently a discretionary judgment involving the balancing of a mix of policy factors. *See Baum v. United States,* 986 F.2d 716, 724 (4th Cir.1993) (the decision whether to replace a guardrail is "at bottom a question of how to best allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate."). As the Tenth Circuit found in a factually similar case involving the same statutes and regulations, "[w]hile portions of the standards, specifications, policies, and guides deal with the specifics of engineering criteria for highways, they are not prescribed as mandatory standards ... but are instead part of the overall regulatory scheme involving policy decisions and competing considerations." *Miller v. United States,* 710 F.2d 656, 666–667 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). Therefore, the statutes and regulations themselves satisfy the first requirement for the discretionary function exception.[2]

Even if the decision to fund was discretionary, it still must be grounded in public policy so that it is the type of decision the discretionary function exception was designed to protect. *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1958–59. As *Gaubert* noted, however, we presume that the actions are grounded in public policy in cases where the statute or regulations allow the Government agent to exercise discretion:

For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute, but on the nature of the actions taken

---

**2.** The Rothrocks suggest that the existence of a guardrail before 1988 establishes a mandatory standard superseding the normal discretion afforded by the statute. The discretion in the initial decision to fund, though, is not removed in later years. Moreover, it would be odd indeed to erect a presumption in favor of safety measures installed thirty years ago when rehabilitating roads today.

**200**

and on whether they are susceptible to policy analysis.

*Id.,* 499 U.S. at 324–25, 111 S.Ct. at 1274–75. For example, *Gaubert* suggested that a Government employee driving for his job would obviously be entrusted with the discretion to make countless discretionary decisions as to how to operate his vehicle, but these would not be the type of decisions the discretionary function exception was designed to protect. *Id.* at n. 7. In the instant case, the Rothrocks attack the United States' decision to fund a bridge resurfacing project which involved the removal of a guardrail. Even without *Gaubert's* presumption, this decision is explicitly subject to policy analysis under the statute and the regulations, which list several considerations to take into account during such an analysis. The Rothrocks suggest that while the initial decision to fund the project was discretionary and susceptible to policy analysis, later decisions were not. In *Berkovitz,* 486 U.S. at 538 n. 3, 108 S.Ct. at 1959 n. 3, the Court highlighted a distinction in *Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955), between the initial decision to construct and the decision to maintain, which the Rothrocks argue is applicable here. This is a poor analogy. It virtually ignores the affirmative nature of the later decision to fund a rehabilitation of the project, and the specific provisions in the regulations which require a discretionary judgment based upon competing policy considerations. *See* 23 C.F.R. § 650.405(b)(2). Moreover, rehabilitation is distinct from maintenance under the Federal Aid–Highway Act. The regulations specifically require the State to maintain a bridge constructed with federal funds, while rehabilitation projects are subject to the same discretionary approval procedure as the initial design and construction. *See id.;* 23 C.F.R. § 650.411(c)(1). Thus, *ARA Leisure Serv. v. United States,* 831 F.2d 193, 195 (9th Cir. 1987), in which the court upheld the decision not to install guardrails as grounded in public policy and subject to the exception, but found that the failure to maintain the road to its original condition was not protected, is inap-

posite. It involved a federal road in which the United States had primary responsibility for maintenance. Furthermore, the failure to maintain cannot be equated with the Government's decision to fund in this case. Thus, the discretionary function exception to the FTCA applies to the Rothrocks' suit and their claim was properly dismissed for lack of subject matter jurisdiction.[3]

Finally, the Rothrocks argue that the district court abused its discretion by ruling on the motion to dismiss without permitting them additional time to conduct discovery on the matter. They suggest that discovery would have allowed them to uncover the role the AASHTO standards played in the decision to fund the rehabilitation and the policy considerations that went into the Government's decision. This argument, however, ignores the operation of the exception. Our concern is whether the statute and regulations grant the Secretary of Transportation and his delegates the discretion to act on this issue and whether that decision was susceptible to policy analysis. Whether or not the employees responsible for making this decision actually took these factors into account is not the issue. *See Gaubert,* 499 U.S. at 324–25, 111 S.Ct. at 1274–75. Both sides had available the applicable statutes and regulations and the complaint's lack of subject matter jurisdiction was grounded in these sources. It was not an abuse of discretion to decide the case without allowing additional time to conduct discovery.

### III.

For the above reasons, the decision of the district court is AFFIRMED.

---

**3.** In light of our foregoing analysis, we need not decide the Government's alternative ground for relief based upon Indiana law.