Gregory MAAS, Frank Felinski, Richard Sciaraffa, and Gregory Binnebose, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 95–3475.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1996.

Decided Aug. 23, 1996.

---

Lawrence W. Leck (argued), Leck & Associates, Chicago, IL, for plaintiffs–appellants.

Thomas P. Walsh, Office of U.S. Atty., Civil Div., Chicago, IL, James G. Touhey, Jr., Lowell Sturgill (argued), U.S. Dept. of Justice, Civil Div., Washington, DC, for U.S.

Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Nearly thirty years ago a United States Air Force airplane carrying nuclear weapons crashed in Greenland. The four plaintiffs in this case were among the servicemen assigned to clean up the wreckage. Two plaintiffs allege they suffer from cancer and two contend they are sterile as a result of radiation exposure during the cleanup effort. The district court dismissed their claims against the United States on the ground that the Federal Tort Claims Act ("FTCA") as interpreted does not permit military personnel to bring negligence actions which arise from activities incident to service. It also ruled that the "discretionary function" exception to the FTCA barred the claims of two of the plaintiffs that the government did not inform them of an increased risk of cancer. Plaintiffs appeal these decisions. We affirm the district court's rulings.

## I.

### A. Facts

In January 1968 a United States Air Force Strategic Air Command B–52 bomber armed with four thermonuclear hydrogen bombs crashed into an ice-covered bay in Greenland. The plane was destroyed and the simultaneous explosion of 200,000 tons of jet fuel and the high explosives within the hydrogen bombs blew the warheads into highly radioactive plutonium and tritium fragments which scattered over the ice flows.

Alerted by the nearby Thule Air Base, the U.S. Air Force Command Post at the Pentagon activated its "Broken Arrow" Control Group which handles lost or damaged nuclear weapons. It put into action a clean-up operation known as Project "Crested Ice." The four plaintiffs in this case were among 300 servicemen and Danish civilian workers who worked on this project.

The clean-up operation worked under extreme and urgent conditions of bitter cold and wind, perpetual darkness, and the impending spring thaw which would break up the radioactive ice. The men worked long hours every day to pick up radioactive debris which consisted of pieces of the airplane and weapon fragments. On occasion their breath froze on the face-masks they wore and they discarded them. This increased the risk of inhaling radioactive particles, including plutonium oxide. Aware of the possibility of radiation exposure, the government tested the workers, but the extreme weather conditions may have compromised the results. The government also tested some of the plaintiffs for up to three years after Project Crested Ice ended, but did not test them after they left the service.

In its "Bier V" report, issued in the 1980's, the National Academy of Sciences noted an increased risk of cancer connected with low-level doses of ionizing radiation. The plaintiffs allege the government became aware of these effects and thus learned that Project Crested Ice participants were more likely to develop certain cancers as a result of their 1968 Greenland tour of duty. The government did not notify the Crested Ice veterans of this new information.

In 1991 Gregory Maas was diagnosed with colon cancer. He claims the cancer resulted from exposure to ionizing radiation, including plutonium, during the clean-up project. Gregory Binnebose was diagnosed with T-cell lymphoma in 1994. He also asserts his cancer developed as a result of his participation in Project Crested Ice. Frank Felinski and Richard Sciaraffa allege they were rendered sterile from radiation because of their participation in the clean-up.

Project Crested Ice participants may apply for and receive service-connected disability benefits on the same basis as other veterans. Each of the plaintiffs filed claims with the government for damages resulting from radiation exposure. Because the plaintiffs did not receive notices of final disposition of their claims within six months of filing, each exercised his option to consider his claim as finally denied pursuant to 28 U.S.C. § 2675(b) and sued the United States.

### B. District Court Proceedings

Each of the four plaintiffs claim they sustained radiation-induced injuries from partic-

ipating in Project Crested Ice. Plaintiffs Maas and Binnebose also charge the government with post-discharge negligence for failing to inform, warn, and test them when it learned during the 1980's that they had been exposed to dangerous doses of radiation. They seek damages for their injuries, and contrast their circumstances with the benefits received by veterans who sustained radiation-induced injuries from exposure at atomic bomb and test sites.

The United States moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction. It argued that the FTCA does not permit military personnel to bring negligence actions which arise from activities incident to service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The district court agreed that none of the plaintiffs had actionable claims. *Maas v. United States,* 897 F.Supp. 1098 (N.D.Ill.1995). It ruled that the *Feres* doctrine barred claims based on plaintiffs' exposure to radiation during Project Crested Ice because the alleged negligence occurred while the plaintiffs were on active duty. *Id.* at 1103. The court also ruled, however, that because the alleged negligence of failing to inform plaintiffs Maas and Binnebose of an increased risk of cancer occurred after they were discharged, *Feres* did not bar their claims. *Id.* at 1104. The district court denied these "post-discharge" claims on the ground they were barred by the FTCA's "discretionary function" exception because a decision to notify servicemen exposed to radiation would involve policy considerations for which the FTCA did not waive sovereign immunity. The district court therefore dismissed the plaintiffs' amended complaint pursuant to Fed.R.Civ.P. 12. *Id.* at 1106.

Plaintiffs sued the United States under the FTCA, 28 U.S.C. § 2671 *et seq.,* and therefore the district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1346. Our jurisdiction arises under 28 U.S.C. § 1291. We review *de novo* a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. *Anthony v. Security Pacific Financial Services, Inc.,* 75 F.3d 311, 315 (7th Cir.1996) (citing *Health Cost Controls v. Skinner,* 44 F.3d 535, 537 (7th Cir.1995)). The district court's resolution of jurisdictional factual issues in the context of a Rule 12(b)(1) motion is reviewed only for abuse of discretion. *Id.* (citing *Pratt Central Park Ltd. Partnership v. Dames & Moore, Inc.,* 60 F.3d 350, 354 (7th Cir.1995)).

## II.

### A. The Feres Doctrine and Plaintiffs' Claims

■ The Supreme Court has held that claims for injuries which arise out of or in the course of military service are outside the FTCA's waiver of sovereign immunity. Under *Feres,* sovereign immunity is restored when injuries to servicemen "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. Thus, a serviceman alleging negligence on the part of military personnel may only bring an action under the FTCA when it is predicated upon negligence that occurred following discharge. *M.M.H. v. United States,* 966 F.2d 285, 289 (7th Cir.1992).

■ All four veterans here allege they sustained injuries as a result of their participation in ultra-hazardous activity during their tour in Greenland. Project Crested Ice was a military mission to which plaintiffs were assigned on active duty status and during which they acted under orders to gather dangerous radioactive debris. Plaintiffs' claims are therefore barred under *Feres,* even though their illnesses appeared after discharge. *Rogers v. United States,* 902 F.2d 1268, 1273 (7th Cir.1990) (alleged government negligence occurring during active duty but manifested after service ended precluded under *Feres;* "Like an incipient cancer cell, . . . mistake [which] would release its harm years later" still barred by doctrine).

Other courts have also concluded that the *Feres* doctrine bars claims for radiation-induced injuries by members of the armed forces exposed to radiation during military service. See, e.g., *Gaspard v. United States,* 713 F.2d 1097 (5th Cir.1983) (sovereign immunity bars claim of former servicemen who under military orders took part in atmospheric weapons tests during early 1950's); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981) (sovereign immunity bars action by

former serviceman to recover for colon cancer resulting from radiation exposure); *Everett v. United States*, 492 F.Supp. 318 (S.D.Ohio 1980) (sovereign immunity bars action brought by surviving spouse against United States to recover for wrongful death of husband who participated in military maneuvers in conjunction with nuclear weapons tests).

█ Plaintiffs retort that the *Feres* doctrine should not preclude their claims because it is a judicially-created exception which applies only "when Congress has otherwise provided compensation systems for injuries or death of those in the armed forces." Although the United States government has taken the special step of providing a system of compensation for veterans exposed to atmospheric nuclear testing or assigned to the American occupation of Hiroshima or Nagasaki, Japan, 38 U.S.C. § 1154(5)(a)(1) ("Veterans' Dioxin and Radiation Exposure Compensation Standards Act"), that system does not include veterans of Project Crested Ice. Further, pursuant to the "NATO SOFA" agreement, the United States must provide 75% of the payment made on claims by Danish civilians (or their surviving families) who worked on Project Crested Ice. In light of this, the plaintiffs argue the *Feres* doctrine should not bar their claims for damages under the FTCA, especially because the United States is compensating foreign nationals for their participation in the same clean-up effort. Plaintiffs note that in holding that Congress did not intend to allow those who were injured on active duty to sue the government for negligence, the Supreme Court in *Feres* reasoned that Congress provided other methods of compensation, which is not the case here.

Application of the *Feres* doctrine does not depend on the extent to which its rationales are present in a particular case. *United States v. Johnson*, 481 U.S. 681, 687–88, 107 S.Ct. 2063, 2067–68, 95 L.Ed.2d 648 (1987). Rather, the test is whether the injuries are based on "service-related activities." See *Walls v. United States*, 832 F.2d 93, 95 (7th Cir.1987) (applying test). The injuries of the plaintiffs in this case satisfy this test because they occurred while plaintiffs were on active duty during a military operation. Further, this and other courts have applied *Feres* to bar claims that are incident to service even if a serviceman is not entitled to military benefits relating to those claims. See *Rogers*, 902 F.2d at 1272 (serviceman's claim that military negligently arrested him on desertion charge even though plaintiff was not entitled to benefits relating to that charge barred by *Feres*); see also *Bowers v. United States*, 904 F.2d 450, 452 (8th Cir.1990) (applying *Feres* although plaintiff not entitled to military benefits); *Maw v. United States*, 733 F.2d 174, 176 (1st Cir.1984) (same).

The district court correctly held that the *Feres* doctrine bars plaintiffs' FTCA claims alleging that the military negligently exposed them to radiation during Project Crested Ice.[1]

## B. Plaintiffs' Post–Discharge Negligence Claims

█ Plaintiffs Maas and Binnebose also have brought claims of post-discharge negligence in which they allege the government

---

1. To their principal brief plaintiffs have attached a copy of a letter from the Department of Veterans Affairs denying Gregory Maas his claims for service-connected disability benefits as a result of exposure to radiation in Project Crested Ice. [Appendix p. 35] The letter states that the VA found insufficient evidence that Maas's injuries are service related. This letter was not part of the record before the district court and is not properly before this court for consideration. See Fed. R.App. P. 10(e); Circuit Rule 10(b).

Even if we were to consider the letter, the implication plaintiffs presumably wish to leave-that they are necessarily ineligible for any compensation—does not follow. At first blush the result of the letter smacks of inequity. The government relies on *Feres* for immunity from suit for "service-related injuries"; Project Crested Ice participants may apply for and receive service-connected death or disability benefits on the same basis as any other veteran; but when plaintiff Maas applied, he was denied with a finding that his injuries were not "service-connected."

But this is only a perceived dilemma. If Maas's disabilities are "service-connected," while *Feres* bans this suit, the VA would have to pay death or disability benefits on the same basis as any other veteran. But because the VA determined Maas's injuries are not "service-connected," as his cancer cannot be causally connected with Project Crested Ice, he is not entitled to benefits.

aggravated their conditions by failing to warn them of an increased risk of developing cancer. Maas, who was discharged in 1968, and Binnebose, who was discharged in 1970, assert that in the 1980's the government learned the full effects of low-level dosages of ionizing radiation on human health (the "Bier V" report) and breached its resulting duty to notify Crested Ice veterans of the new information. The government attempts to dodge this by arguing plaintiffs suffered from only a "continuing tort" still barred by the *Feres* doctrine.

This court in *M.M.H.* recognized a tort for failure to inform, warn, or test in light of information known after a serviceman's discharge. 966 F.2d at 288–89. In *M.M.H.* we joined other circuits which held under *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), that a plaintiff "can maintain an action based on the army's post-discharge failure to warn or treat the injured service person if the negligent act constituted a new and independent tort." *M.M.H.,* 966 F.2d at 288. Other courts have reached the same conclusion in similar circumstances. See, e.g., *Persons v. United States,* 925 F.2d 292, 297–98 (9th Cir.1991) (allegation of harmful conduct "completely independent of purported negligence" not barred by *Feres* doctrine) (citing *Kohn v. United States,* 680 F.2d 922, 926 (2d Cir.1982)); *Molsbergen v. United States,* 757 F.2d 1016, 1019–20 (9th Cir.1985) (allegations limited to government conduct post-discharge not barred by *Feres*); *Seveney v. United States,* 550 F.Supp. 653, 660 (D.R.I.1982) ("The allegation that the government failed to warn plaintiffs of Seveney's exposure to radiation states a distinct and separate act from the original act of exposing Seveney to the radiation"; such a claim not barred by *Feres* doctrine).

Maas and Binnebose allege a new and independent tort. The negligence of which they complain occurred following their discharge from the Air Force. Accordingly, the district court correctly rejected the government's "continuing tort" theory and found that the *Feres* doctrine did not bar the claims of these plaintiffs.

## C. Plaintiffs' Post–Discharge Negligence Claims And The Discretionary Function Exception to the FTCA

Instead, the district court concluded that 28 U.S.C. § 2680(a) barred the post-discharge negligence claims of Maas and Binnebose. This FTCA section excepts from its waiver of sovereign immunity claims based upon the exercise or performance of discretionary functions regardless of "whether or not the discretion involved be abused." This "discretionary function" exception covers acts requiring an element of judgment or choice and is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

The district court relied on *In re Consolidated U.S. Atmospheric Testing Lit.,* 820 F.2d 982 (9th Cir.1987), cert. denied sub nom. *Konizeski v. Livermore Labs.,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988), which rejected a claim that the government violated its alleged duty to warn plaintiffs of the risks of low-level radiation exposure. In *Atmospheric Testing,* the Ninth Circuit found that judgments and decisions concerning exposure to radiological hazards and the degree of protection to be afforded participants in those tests were policy judgments, and therefore within the discretionary function exception. 820 F.2d at 995. The district court in this case concluded that a decision to warn, test, and counsel the Project Crested Ice veterans involves "the exercise of judgment and discretion at high levels of government."

Plaintiffs attempt to distinguish this case from *Atmospheric Testing* by pointing out that rather than the thousands of individuals involved in that case, only a few hundred of the 2–3,000 participants in Project Crested Ice were involved in the recovery of aircraft and weapons debris. Further, the daily decontamination records were maintained at the base camp when the servicemen returned from the crash site, making it (they allege) easy to determine who was exposed to radiation. Plaintiffs also stress the purported ease of notification. They assert that, as in

*M.M.H.*, notice could be accomplished by the simple ministerial act of sending a post-card or letter warning plaintiffs of the potential for increased health risk as a result of their exposure to ionizing radiation in Greenland.

The government responds that the decision to inform, warn, or test veterans who participated in Project Crested Ice based on new studies is purely discretionary because it involves judgment and execution. It submits that a warning of the type plaintiffs seek—which would include resource allocation decisions and involve the weighing of evidence, a matter of agency discretion—places it within the discretionary function exception.

■ This court recently considered the contours of the discretionary function exception in *Rothrock v. United States,* 62 F.3d 196 (7th Cir.1995). We recognized two factors in determining whether the exception bars suit against the United States: (1) it covers only discretionary acts, that is, which involve *an element of judgment or choice;* and (2) even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the exception was designed to shield. Because the purpose of the exception is to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy, it protects only governmental actions and decisions *based on considerations of public policy. Id.* at 198. See also *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (applying this test).

■ The circumstances of this case easily satisfy the first of the two elements in *Rothrock.* No statute or regulation gives the Air Force a precise and optionless directive in handling studies showing a greater incidence of cancer in servicemen involved in past military activities. Cf. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988) (discretionary function exception does not apply when federal law or policy specifically proscribes a course of action for an employee to follow). Without statutes or regulations which would require the military to undertake a program to alert Crested Ice veterans of new cancer statistics, the decision to warn these plaintiffs

is the military's. Rather than rote ministerial actions, the path down which Maas and Binnebose would have the military travel is replete with choices: To provide notice would require resources and assignment of employees. How many resources, and who should be assigned? It would also require scientific and administrative determinations. How much radiation was too much? How much exposure is enough to require notice? Which veterans were exposed to how much radiation? And which were exposed to too much? How should such a notice be phrased to avoid panic? To answer these questions requires the exercise of judgment and discretion.

Moreover, these exercises of discretion involve policy considerations. Those things plaintiffs wish were done—warning, further testing, etc.—are susceptible to policy analysis. In ascertaining the need for a warning and its cost, and in determining the group to be alerted, as well as the content and procedure of such notice, the government would balance safety with economic concerns. Deciding whether health risks justify the cost of a notification program, and balancing the cost and the effectiveness of a type of warning, are discretionary decisions covered by § 2680(a). See, e.g., *Bailor,* 51 F.3d at 685 (halfway house staff discretion in determining if resident poses danger to public evidences balancing by Bureau of Prisons of limited agency resources with public safety concerns and represents policy choice protected under discretionary function exception); *Cassens v. St. Louis River Cruise Lines,* 44 F.3d 508, 511 (7th Cir.1995) (decisions requiring balancing of safety and economics fall into discretionary function exception); see also *Lockett v. United States,* 938 F.2d 630, 639 (6th Cir.1991) ("discretionary decisions based upon 'judgment calls' concerning the sufficiency of evidence of violations of applicable regulations, the allocation of limited agency resources, and determinations about priorities of serious threat to public health, are the very 'public policy' discretionary judgments Congress intended to shield from liability under section 2680(a)"); *Graves v. United States,* 872 F.2d 133, 137 (6th Cir.1989) (government conduct in establishing and implementing safety pre-

cautions after closure of lock on river immune from suit, as local district exercised policy discretion and considered costs, feasibility of maintenance, and effectiveness in arriving at appropriate type of warnings). The second *Rothrock* factor—that the judgments are based on policy considerations—is thus satisfied as well.

The district court correctly distinguished *M.M.H.*, in which we held that the *Feres* doctrine did not preclude a former soldier from suing the army in tort for failing to inform her that she was not infected with the HIV virus as she had been previously mistakenly told. First, in *M.M.H.* the army *knew* the former soldier was not infected. In this case it is only speculative as to whether the injuries of Maas and Binnebose are service-related. Moreover, the ruling in *M.M.H.* required little effort by the allegedly negligent government. Informing *M.M.H.* that she had been misdiagnosed required one simple telephone call or letter within days of her discharge. Here, significant expenditures of time and money would need to be undertaken. Notification of hundreds of veterans nearly 30 years after the event in question about potentially serious effects of radiation exposure invokes discretion in policymaking areas, rather than a mere "operation level" decision. Thus, this case is more similar to *Atmospheric Testing*, with its safety and notice decisions, than *M.M.H.*, with its duty to contact a single person.

A sufficient record is before us to reach this conclusion. To survive a motion to dismiss, plaintiffs needed to plead facts which supported a finding that the challenged actions are not conduct grounded in the policy of a regulatory regime. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). This analysis is routinely undertaken incident to a motion to dismiss, e.g., *Rothrock*, 62 F.3d at 198, because it directly implicates subject matter

jurisdiction. *Id.*[2] The relevant inquiry is merely whether the conduct at issue is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275. As explained above, the necessity of a warning and other attendant issues inexorably involve discretionary policy matters. We know from the facts pleaded that the decisions Maas and Binnebose claim the government should have made are grounded in public policy. The nature of the decisions they claim the government should have made—to inform, warn, or test veterans who participated in Project Crested Ice—would require it to exercise discretion implicating safety, economic, and efficiency concerns. Thus, we can conclude on this record that the discretionary function exception bars plaintiffs' claims.

### III.

The *Feres* doctrine bars plaintiffs' claims that the military negligently exposed them to radiation during Operation Crested Ice. Although not precluded by the *Feres* doctrine, the FTCA's discretionary function exception mandates dismissal of the claims of plaintiffs Maas and Binnebose alleging the government negligently failed to warn them of the potential risk of cancer from their exposure to radiation during Operation Crested Ice. The district court's decision is consequently

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I write separately to raise an important issue, not argued by the parties or addressed by the majority, which could be crucial in cases of this sort. That question is whether the discretionary function exception applies only to suits challenging *affirmative* "acts that involve an element of judgment or choice," *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d

**2.** See, e.g., *Pifer v. United States*, 903 F.Supp. 971, 974–75 (N.D.W.Va.1995) (motion to dismiss complaint by passenger injured when vehicle in which he was riding veered off U.S. Forest Service road granted; decisions as to design and maintenance of road within discretionary function exception because they require balancing environmental preservation, aesthetic, safety, and economic considerations); *Bergquist v. Unit-*

*ed States*, 849 F.Supp. 1221, 1225, 1229 (N.D.Ill. 1994) (motion to dismiss complaint against National Weather Service for alleged negligence in forecasting and issuing tornado warnings granted; discretionary function exception applied because cost and budgetary policy considerations implicated in Service's decisions on technology, staffing levels, and training related to tornado forecasting and warning).

335 (1991). Alternatively, the exception may also apply to government *failures* to act when any effort to act would likely have required an exercise of judgment grounded in considerations of public policy. The issue is therefore whether mere omissions as well as affirmative exercises of judgment are covered. In the present case, we are apparently addressing a mere omission.

The question I describe has arisen infrequently, since most reported cases involve affirmative discretionary actions or allegations of negligence in the administration of existing regulatory programs. As the majority notes, there is a two-part test for determining whether the discretionary function exception applies. The exception covers "acts that are discretionary in nature, acts that 'involve an element of judgment or choice.' " *Id.*, quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). However, even if the act involves an element of judgment, it must also be shown that "that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273, quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959. Most often, the reported cases turn on whether a decision was of the *kind* shielded by the exception. This sort of analysis is in contrast to an inquiry whether there has actually been an act involving an element of judgment or choice. Two courts of appeals have considered the question whether the exception applies only to decisions actually made and have come to opposite conclusions.

The Ninth Circuit, in a case relied upon by the majority, addressed a claim of failure to warn against dangers resulting from radiological exposure, which was similar to the claims presented here. *In re Consolidated United States Atmospheric Testing Litigation,* 820 F.2d 982 (9th Cir.1987), cert. denied sub nom. *Konizeski v. Livermore Labs,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). There, the appellants made the argument that the discretionary function exception could not apply in the absence of a "conscious decision" by the government not to warn possible victims. This contention was apparently based on lack of any evidence of measures taken before 1977 for actually deciding not to issue warnings. The *U.S. Atmospheric* court rejected the argument, reasoning that "[i]f the decision to issue or not to issue a 'warning' is within the discretionary function exception, then logically the failure to consider whether to issue one necessarily falls within the exception as well." *Id.* at 998–99.

The First Circuit, however, rejected the view that the discretionary function exception applies to anything that is hypothetically "susceptible of discretion." *Dube v. Pittsburgh Corning,* 870 F.2d 790 (1st Cir.1989). That court noted that "the discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Id.* at 796, quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959. In that case, which involved the failure to warn a Navy shipyard worker of the dangers of asbestos, the First Circuit concluded that "[b]ecause there was no exercise of judgment, the government appears to fail the threshold test of establishing that its conduct was protected from liability under the exception." *Dube,* 870 F.2d at 796. The *Dube* court recognized that "[w]here the activity is a traditional governmental function, it is possible that failure to exercise judgment will remain within the discretionary function exception," *id.* at 798, but concluded that, on the facts of that case, the common law duty to warn remained intact.

Since these two cases were decided, the Supreme Court in *Gaubert* has returned to the issue of the scope of the discretionary function exception. The specific situation addressed by *Gaubert* was whether there was a distinction between "policy decisions" and "operational actions," a question which is of no relevance to the current discussion. However, in analyzing that question the Court engaged in a discussion of the purpose of the discretionary function exception. That discussion may provide some insight into whether the discretionary function exception should be applied in cases where the government agency failed to make any decision or exercise any judgment.

According to the Supreme Court in *Gaubert:*

Because *the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions* grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.

. . .

For a complaint to survive a motion to dismiss, it must allege facts which would support a finding *that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.* The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* 499 U.S. at 323–25, 111 S.Ct. at 1274–75 (citations omitted; emphasis added). Thus, where there is a governmental program in place, "[a]ctions taken in furtherance of the program [are] protected, even if those particular actions were negligent." *Id.*

The *Gaubert* discussion suggests that the Federal Tort Claims Act might be viewed as providing two alternative regimes for monitoring governmental actions. The common law provides a basic standard drawn from what a "reasonable person" would do. However, when Congress has delegated the responsibility of weighing costs and benefits to some presumably expert administrative body—when there is, in the phrase of *Gaubert,* a "regulatory regime"—the application of common law standards would constitute "judicial second-guessing" of policy decisions made by the regulators. If this view of *Gaubert* is correct, it lends support to the *Dube* conclusion that "where there is no poli-

cy judgment, courts would be 'second-guessing' by implying one." *Dube,* 870 F.2d at 800.

This perspective on the discretionary function exception is also consistent with the cases cited by the majority.[1] In those cases, the challenged actions or decisions took place within an established regulatory regime. In *M.M.H. v. United States,* 966 F.2d 285 (7th Cir.1992), by contrast, the failure to notify an army veteran that the positive HIV blood test result she had received was in error was actionable under the FTCA.[2] The decision when and whether to inform veterans of mistakes in medical tests is, hypothetically at least, "susceptible of policy analysis." There was, however, no hint in *M.M.H.* of the existence of any regulatory regime governing erroneous medical reports.

In the case before us, there might well have been a question whether there existed a regulatory regime governing the question of veterans who had been exposed to radiation and who should be notified of later scientific studies indicating more severe effects than originally supposed. The record in this case does not disclose whether there was a conscious decision not to alert the Project Crested Ice veterans of the results of the National Academy of Sciences report or whether the question was simply never considered. Plaintiffs have not argued that the lack of a conscious decision takes the failure to warn out of the discretionary function exception. The appellants not having raised the question, the majority predictably provides no answer. However, the question is fundamental and, if not raised here, is likely to appear again.

---

**1.** *Bailor v. Salvation Army,* 51 F.3d 678 (7th Cir.1995) (exception applies to placement of prisoner in halfway house); *Cassens v. St. Louis River Cruise Lines,* 44 F.3d 508 (7th Cir.1995) (exception applies to Coast Guard inspection of excursion cruise boat); *Rothrock v. United States,* 62 F.3d 196 (7th Cir.1995) (exception applies to decision whether to fund road project in light of various prescribed factors); *Lockett v. United States,* 938 F.2d 630 (6th Cir.1991) (exception applies to decision when to warn residents of

possible PCB contamination of soil); *Graves v. United States,* 872 F.2d 133 (6th Cir.1989) (exception applies to decision concerning appropriate warnings of closing of river locks).

**2.** Though the discretionary function exception was not the subject of explicit discussion in that case, it is jurisdictional. Thus, if it was not discussed, it must be taken not to have applied.