Jeannemarie SELBE, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 97–1050.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 2, 1997.

Decided Dec. 3, 1997.

Joseph J. Reiswerg (submitted on briefs), Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, IN, for Plaintiff–Appellant.

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, for Defendants–Appellees.

Before ESCHBACH, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Since 1950, the Supreme Court has held that the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2675, does not waive the sovereign immunity of the United States for injuries arising out of activity relating to the injured person's military service. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *see also United States v. Johnson*, 481 U.S. 681, 692, 107 S.Ct. 2063, 2069–70, 95 L.Ed.2d 648 (1987); *United*

States v. Shearer, 473 U.S. 52, 58, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985). Compare United States v. Brown, 348 U.S. 110, 112–13, 75 S.Ct. 141, 143–44, 99 L.Ed. 139 (1954) (acknowledging Feres but finding it inapplicable). The Feres doctrine, as it has come to be called, has been criticized both in judicial opinions, see Johnson, 481 U.S. at 700–01 n. *, 107 S.Ct. at 2074 n. * (Scalia, J., dissenting); Taber v. Maine, 45 F.3d 598 (2d Cir. 1995) (Calabresi, J., discussing the doctrine), and in academic commentaries, see Wells, "Providing Relief to the Victims of Military Medicine: A New Challenge to the Application of the Feres Doctrine in Military Medical Malpractice Cases," 32 Duq. L.Rev. 109 (1993); Note, "Military Medical Malpractice and the Feres Doctrine," 20 Ga. L.Rev. 497 (1986); Bennett, "The Feres Doctrine, Discipline, and the Weapons of War," 29 St. Louis U.L.J. 383 (1985); Rhodes, "The Feres Doctrine After Twenty–Five Years," 18 A.F. L.Rev. 24 (1976). Nevertheless, the Supreme Court still follows it, Congress has never modified it, and this court has pronounced it "alive and well." See Duffy v. United States, 966 F.2d 307, 312 (7th Cir. 1992).

In this case, Jeannemarie Selbe is attempting to sue the United States and the Department of Veterans' Affairs (the VA) under the FTCA for injuries she received at the hands of the VA while she was on active duty with the Indiana National Guard, as well as for aggravations to those injuries or additional injuries from the medical care she received. Although she has suggested several avenues around the obvious problem the Feres doctrine poses for her, we conclude that none does the job. We therefore affirm the district court's judgment dismissing Selbe's case for lack of jurisdiction.

As she relates the story, Selbe had a frustrating and entirely unsatisfactory experience with the Army's medical services. She initially broke her hand on June 6, 1991, while she was at an Army camp on assignment for training with the Indiana National Guard. As she was preparing to go out for the evening, she spotted a man in the women's barracks rifling through purses, and she gave chase. Trying to stop him, she caught her hand on a door jamb and broke the fifth metacarpal bone.

Army hospital personnel at Fort Benjamin Harrison in Indianapolis referred Selbe to Johnson County Hospital, which diagnosed the fracture and put her hand in a fiberglass cast. A week later, at Ireland Army Community Hospital in Fort Knox, Kentucky, the cast was replaced. The next day, because her hand was swelling, Selbe was sent first to Hawley Army Community Hospital and then to Roudebush Medical Center in Indianapolis, a hospital administered by the VA. Roudebush personnel removed the cast and placed her hand in a temporary cast. A few weeks later, back at Ireland Army Community Hospital, it was necessary again to remove the cast in order to increase circulation to her thumb. By August 14, 1991, two months after the injury, Ireland doctors diagnosed Selbe with reflex sympathetic dystrophy and noted that the fracture was healing slowly. On August 20, back at Roudebush, Selbe was told to begin a prescribed physical therapy regimen. She followed directions, but on September 25, 1991, while performing her exercises, she felt her hand "pop." On October 5, she returned to Ireland where she was told that there was a nonunion of the original fracture site. She underwent surgery at Ireland on November 25 to address this problem, but remains seriously impaired: at this point, she claims, her hand has been "rendered ... permanently impaired and useless."

As required by 28 U.S.C. § 2675, Selbe filed an administrative tort claim with the VA, in which she claimed that the VA (through Roudebush) was negligent in its August 20 physical therapy order. The VA denied the claim on June 13, 1994, stating tersely that it had investigated and had found no negligence on the part of VA employees. The notice of denial also informed Selbe of her right to take the case to a federal district court under the FTCA. She did so, but the district court found her suit jurisdictionally barred by Feres.

We review a jurisdictional dismissal under Rule 12(b)(1) de novo, looking beyond the pleadings if necessary. Rothrock v. United States, 62 F.3d 196, 198 (7th Cir. 1995); Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir.1995). The dispositive question is

whether Selbe's injuries arose out of or were in the course of activity incident to service. *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. Suits brought by National Guard personnel under the FTCA are generally barred by the *Feres* doctrine. See, *e.g., Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (third-party indemnity action barred by *Feres* where national guardsman was injured when life egress system of aircraft malfunctioned); *Herreman v. United States,* 476 F.2d 234 (7th Cir.1973) (*Feres* barred action of Wisconsin National Guard member killed during training flight while riding as non-paying passenger, in uniform, on miliary aircraft following a fishing trip). In addition, it is uncontested that the original injury occurred while she was on active duty and she had not been discharged when the subsequent injury occurred, which is a factor tending to show that her suit is barred. See, *e.g., Jackson v. United States,* 110 F.3d 1484, 1487–88 (9th Cir.1997); *Schoemer v. United States,* 59 F.3d 26, 29 (5th Cir.1995).

 Hoping to avoid this logic, Selbe relies heavily on the argument that her injuries did not arise from her military service, or even from the incident in the barracks when she broke her hand. Instead, she urges, they arose from the negligent treatment she received at the VA hospital, in two respects: first, the June 17 re-casting of her hand at Roudebush; and second, the decision of the Roudebush staff to prescribe physical therapy for her on August 20. Roudebush is a VA hospital, not an Army hospital, and Selbe claims that the negligent treatment she received there was the proximate cause of her injuries, not the initial incident in the barracks. This means that persons who were *not in the armed forces* were the ones guilty of negligence, which Selbe believes distinguishes her case from *Feres* and its companion cases, *Jefferson v. United States* and *United States v. Griggs,* both at 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

Unfortunately for Selbe, her theory overlooks a basic rule of tort law that does not permit her to distinguish so sharply between the original incident and the medical treatment she received for it. A defendant who negligently inflicted an injury on someone is normally liable for the results of medical treatment of the injured victim, even if that medical treatment itself is negligently performed. See, *e.g., Gertz v. Campbell,* 55 Ill.2d 84, 302 N.E.2d 40, 43–44 (1973) (original tortfeasor liable for aggravation of injury caused by subsequent tortfeasor, a negligent physician, although the original tortfeasor may also have a claim for indemnity against the subsequent one); *Whitaker v. Kruse,* 495 N.E.2d 223, 225–26 (Ind.Ct.App.1986) (original tortfeasor liable for subsequent injuries arising from medical treatment required as a result of the original misconduct). See generally Prosser & Keeton on The Law of Torts § 44 at 309 (5th ed.1984); Restatement (2d) of Torts § 457. Even though Selbe is trying hard to say that the Army itself did not injure her, she would concede that the *Feres* doctrine would bar a suit against the Army for her original injury, based on a theory like failure to maintain proper security in the building. Even though the *Feres* doctrine is not based on general principles of tort law, see *Joseph v. United States,* 505 F.2d 525, 526 (7th Cir.1974), the links between the two actions recognized by tort law are instructive for characterizing the factual basis of Selbe's action.

Selbe responds by pointing to *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), in which the Supreme Court found that the *Feres* doctrine did not bar a discharged veteran's recovery for a negligent medical procedure that had been necessitated by an injury he received while in active military service. The Court there emphasized the fact that the "injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after discharge, while he enjoyed a civilian status." *Id.* at 112, 75 S.Ct. at 143. In fact, the injury occurred a full seven years after his honorable discharge from active service. By that time, his damaged knee was simply a condition that the VA hospital had a duty to treat competently, just like any other condition. In so holding, the Court drew a distinction between the type of causal relationship required to invoke the *Feres* doctrine and the looser causation needed to entitle the veteran to benefits under the Veterans Act. See also *Maas v. United States,* 94 F.3d 291,

296 (7th Cir.1996) (holding that no *Feres* bar applied where plaintiffs alleged independent tort for failure to notify servicemen of increased risk of cancer, as a result of being ordered while in the military to pick up nuclear weapons fragments, because tort occurred after discharge); *M.M.H. v. United States*, 966 F.2d 285, 288–89 (7th Cir.1992) (no *Feres* bar because Army had separate, independent post-discharge duty to notify soldier that it had erred in telling her she was HIV-positive).

Nothing like the seven-year hiatus and termination of military status involved in *Brown*, which broke the chain of causation in that case for purposes of the FTCA, occurred here. To the contrary, Selbe was engaged in a continuing course of treatment for her hand injury, going back and forth from Army hospitals to the VA's Roudebush facility. She was indisputably on active duty with the National Guard at the time the original injury occurred, and the Army authorized and paid for her treatments at the various hospitals. Indeed, Selbe's eligibility to receive medical treatment at the Army and VA hospitals was a benefit of her military status as a National Guard member. See 10 U.S.C. § 1074a(a), (b) (entitling a member of a "uniformed service" who is on inactive duty training or active duty for 30 days or less to medical and dental care in any facility of any uniformed service); 10 U.S.C. § 1072(1) (defining "uniformed services" to include, inter alia, the "armed forces"); 10 U.S.C. § 101(a)(4) (defining "armed forces" to mean "the Army, Navy, Air Force, Marine Corps, and Coast Guard"); and 10 U.S.C. §§ 3078 and 8078 (respectively declaring that the Army National Guard and the Air National Guard are components of the Army and the Air Force) (repealed; now see 10 U.S.C. § 10106). *See also Jones v. United States*, 112 F.3d 299, 302 (7th Cir.1997) (*Feres* bar applies where, among other things, service member was "being treated as an Army patient under Army medical benefits").

This leaves only Selbe's policy arguments against the application of the *Feres* doctrine in this situation. As she correctly notes, the Supreme Court has identified three rationales that underlie the doctrine: the distinctively federal character of the relationship between the government and members of its armed forces (which argues against the FTCA's incorporation of the liability standards of the law of the place of injury); the existence of statutory disability and death benefits for service-related injuries; and the possibly damaging effect of a lawsuit on military discipline, where a suit might require a civilian court to secondguess military decisions. *See generally Johnson*, 481 U.S. at 688–89, 107 S.Ct. at 2066–68. We know, however, that these criteria do not prevent the application of the *Feres* bar to suits for medical malpractice arising out of military injuries, because the Court itself has applied it in that circumstance, notwithstanding the tenuous link between these rationales and malpractice cases. *Jefferson v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). For us, as a lower court, that is the end of the matter. The Supreme Court continues to apply *Feres* to this kind of case, and so must we.

We therefore AFFIRM the district court's judgment dismissing Selbe's claim for want of jurisdiction.